[Crim. No. 2674. In Bank.—January 15, 1925.]

# THE PEOPLE, Respondent, v. RONALD CHARLES ERNO and WILLIAM A. HARD, Appellants.

[1] CRIMINAL LAW—JOINT CHARGE—SEPARATE TRIALS—DISCRETION.— When two or more defendants are jointly charged with a public offense they must be tried jointly, unless the court order separate trials, and it is not bound to order separate trials upon the mere request of a defendant.

[2] ID. — MURDER — APPEAL — REVIEW OF RULING DENYING SEPARATE TRIALS—BASIS FOR—TIME.—Assuming that the question whether or not the trial court abused its discretion in denying a demand for separate trials to two parties jointly charged with murder may be reviewed on appeal, it can only be done upon the basis of the showing made when the demand was presented, and not upon what transpired afterward.

[3] ID.—JOINT CHARGE—QUESTION OF FACT.—Where two persons are jointly charged with a murder, whether or not one of them killed the decedent, and whether or not the defendants were jointly concerned in the commission of the crime, and the murder was the ordinary and probable effect of a common purpose, were questions of fact to be determined by the jury from all the evidence.

[4] ID.—COMMON DESIGN—JOINT GUILT.—If a murder is committed by either of two defendants, in carrying out some common design, each is equally guilty of the crime, whether or not he fired the fatal shot.

[5] ID.—EVIDENCE—DISCREDITING OF DEFENDANT—QUESTION FOR JURY.— In a prosecution of two persons jointly charged with murder, whether or not one of them was so far discredited and impeached as to render his testimony unbelievable and of no weight was a question addressed to the consideration of the jury.

[6] ID. — PREMEDITATION — PROOF. — Premeditation, or malice aforethought, is a necessary ingredient to the crime of murder, but it is not necessary that there should be express evidence of a deliberate purpose to kill; it may be inferred from proof of such facts and circumstances in the case as will reasonably warrant

1. At what time demand for separate trial may be made, note, Ann. Cas. 1915B, 802. See, also, 8 R. C. L. 167; 8 Cal. Jur. 193.

3. See 5 Cal. Jur. 520.

4. See 5 Cal. Jur. 502.

6. "Malice aforethought" in murder, note, 38 L. R. A. (N. S.) 1054. See, also, 13 R. C. L. 763; 13 Cal. Jur. 683.

an inference of its existence, and the making of such inference is a matter exclusively within the province of the jury.

[7] ID.—EVIDENCE—PROOF OF COMMISSION OF OFFENSE BY ANOTHER.— It is always proper to show that some other person, and not the defendant, committed the crime with which the latter is charged, but the rule does not extend further than to mean that such showing should be made in the proper manner, and in accord with the ordinary rules of evidence; and in a case where two parties were jointly on trial for murder in which each defendant took the stand in his own behalf, it cannot be determined on appeal whether or not any substantial right of the appellant was prejudiced by the exclusion of evidence offered by him to show statements of the other defendant, made after the commission of the crime, tending to incriminate himself and exculpate appellant, where no foundation was laid for impeaching the testimony of the defendant who was alleged to have made the statements and where the party did not clearly state to the court the purpose of the testimony.

[8] ID.—INSTRUCTION—FLIGHT.—In a prosecution for murder an instruction, in effect, that the flight of a person immediately after the commission of a crime, or after a crime has been committed with which he is charged, is a circumstance to be weighed by the jury as tending in some degree to prove a consciousness of guilt, and is entitled to more or less weight according to the circumstances of the particular case, should not have been given, as it did not include any admonition that the defendant must know that the crime had been committed, and that he was accused of having committed it, but no prejudicial error was committed through the giving of the instruction where the evidence showed that defendant knew that the crime had been committed, and no other inference can be reasonably drawn from the evidence but that he knew he would be charged with it.

[9] ID.—SEPARATION OF JURY—DISCRETION.—The jury are permitted to separate at adjournment and recess until the case is submitted to them for decision, unless the court, in its discretion, orders them to be kept together in charge of an officer during the progress of the trial.

---

7. See 8 R. C. L. 185; 8 Cal. Jur. 49; 5 Cal. Jur. 527.

8. See 8 R. C. L. 192; 8 Cal. Jur. 346.

9. Separation of jury in criminal case, note, 60 Am. Rep. 73. Consequences of unauthorized separation of jury, note, 43 Am. Dec. 75.

Presumption of prejudice from improper separation of jury, notes, 1 Ann. Cas. 287; Ann. Cas. 1914A, 737; Ann. Cas. 1916A, 253. See, also, 16 R. C. L. 309–311; 8 Cal. Jur. 384, 424–426.

[10] ID.—ADJOURNMENT OF TRIAL—INFLUENCE ON JURY—PROOF.—In a prosecution for murder, where an adjournment during the trial for a period of ten days was taken with the full consent of all the counsel in the case, if the jury was improperly influenced during that period, the burden was upon the defendant to show that fact and that he was prejudiced by the action taken.

[11] ID.—VERDICT—APPEAL.—In a prosecution for murder, where the evidence was sufficient to warrant the jury in inferring the existence of a deliberate intent on the part of the defendants to kill the deceased, the verdict of the jury finding the defendants guilty without recommendation, which was approved by the trial court upon motion for a new trial, is conclusive on appeal.

(1) 16 C. J., p. 785, sec. 2006. (2) 17 C. J., p. 235, sec. 3549. (3) 30 C. J., p. 322, sec. 569. (4) 29 C. J., p. 1073, sec. 46. (5) 16 C. J., p. 929, sec. 2290, p. 930, sec. 2291. (6) 29 C. J., p. 1084, sec. 60; 30 C. J., p. 293, sec. 538, p. 325, sec. 572. (7) 16 C. J., p. 559, sec. 1085; 17 C. J., p. 173, sec. 3464; 40 Cyc., p. 2719. (8) 16 C. J., p. 985, sec. 2391; 17 C. J., p. 339, sec. 3688. (9) 16 C. J., p. 1076, sec. 2527. (10) 16 C. J., p. 1224, sec. 2742½. (11) 30 C. J., p. 455, sec. 726.

APPEAL from a judgment of the Superior Court of Siskiyou County and an order denying new trial. C. J. Luttrell, Judge. Affirmed.

The facts are stated in the opinion of the court.

William F. Barta and Buel R. Wood for Appellant Erno.
Joseph P. McNamara and B. D. Marx Greene for Appellant Hard.

U. S. Webb, Attorney-General, J. Charles Jones, Dixwell L. Pierce, Deputy Attorney-Generals, and William F. Cleary for Respondent.

WASTE, J.—Ronald Charles Erno and William A. Hard were charged with the murder of Fred Skeen at the home of the decedent's mother, in Siskiyou County. A motion for separate trials was denied. The jury returned a verdict of murder in the first degree, and made no recommendation. The trial court thereupon sentenced both defendants to pay the extreme penalty. As the defendant Hard was under the

11. See 13 Cal. Jur. 740.

age of eighteen years at the time of the commission of the crime, the Governor has commuted his sentence to life imprisonment. Each of the defendants has appealed.

In the latter part of September, 1923, Hard and Erno, with another young man by the name of Lowe, left Los Angeles in an automobile for the northern part of the state on a trapping expedition. They were joined by a man named Taylor, an experienced trapper, who suggested that Siskiyou County was a likely place for such a venture. The four then went to the Skeen ranch, where, for a time, they remained in a cabin about half a mile from the ranch-house. Taylor abandoned the venture, and Lowe, becoming dissatisfied, went to Los Angeles. Erno was employed by the Skeens as a utility man, receiving, in addition to his wages, board and lodging at the ranch-house. Defendant Hard worked part of the time in the neighborhood, sometimes assisted by Erno.

The story of the murder was told by the defendants themselves, and there is a conflict as to what occurred, each of the defendants doing his utmost to fasten the actual killing of Skeen upon the other. The crime was committed one night when there was no one at the ranch-house other than the decedent and the defendants Erno and Hard. Young Skeen was found lying in his bed dead, with a bullet hole through his head. A Studebaker automobile belonging to Mrs. Skeen was missing, and so were a number of the guns belonging to the Skeens and various articles of wearing apparel of the decedent. Hard and Erno were arrested in Los Angeles, in possession of the automobile, some of the wearing apparel of the murdered boy, and his automatic pistol. The guns had been disposed of on the way by the defendants for money, gasoline, and other supplies. After the defendants were arrested each of them made a number of statements concerning the commission of the crime. They talked to the officers in the county jail in Los Angeles, to whom Hard at first denied knowing Skeen, and said they bought the automobile in Oregon for $350. On the way from that city to Yreka each of the defendants made a statement to the sheriff of Siskiyou County. After they arrived at Yreka they made various statements to different people. According to the story told by Hard it was Erno who shot Skeen while Hard was outside the ranch-house. Erno then forced Hard to flee

in the Skeen automobile, after collecting the guns in the house. When asked by the county detective in Los Angeles why he did not tell someone along the way from the Skeen home to Los Angeles that Erno had committed the murder, he said he had no chance. Erno's statements were to the effect that it was Hard who did the shooting while Erno was out of the house, and that Hard threatened to kill him unless he fled with him from the scene of the crime. While the defendants were confined in the county jail in Yreka awaiting trial the mother of the murdered man had a talk with Erno in the presence of a witness, Roy Tabor. Mrs. Skeen and Tabor testified at the trial that during the conversation Erno said that it was he who shot the decedent. Erno denied the effect of such purported statement. On cross-examination Erno admitted that certain statements he had made after his arrest were false, but adhered to his story that it was Hard who shot the decedent. Hard's story on the witness-stand was substantially a repetition of his previous statements.

When the defendants were arraigned, Hard demanded that he be granted a separate trial. The request was denied, and that is the first point made by him on this appeal. The motion for a severance was supported by an affidavit of the attorney for Hard to the effect that the defendants each maintained that the alleged crime was committed by the other, and their interests were therefore in direct conflict. The affidavit contained no statement of facts or forecast of the evidence to be introduced on the trial. In opposition to the motion, the district attorney filed an affidavit which set forth the substance of the facts we have related, except as to the accusatory statements which had been made by the defendants, and that the prosecution intended to proceed upon the theory that the crime was committed by the defendants in the execution of a joint purpose. [1] When two or more defendants are jointly charged with a public offense they must be tried jointly, unless the court order separate trials. (Pen. Code, sec. 1098.) The trial court did not commit error in denying the motion for a severance. (*People* v. *Bringhurst*, 192 Cal. 748, 753 [221 Pac. 897].) It was not bound to order separate trials upon the mere request of a defendant. (*People* v. *Anderson*, 59 Cal. App. 408,

431 [211 Pac. 254]; *People* v. *Rogers,* 60 Cal. App. 177 [212 Pac. 412].) Appellant's contention is that in a case where antagonistic defenses are to be maintained by the defendants, a severance ought to be granted. While there are decisions from other jurisdictions holding that where one defendant is seeking to escape conviction by throwing the blame for the offense on the other, a separate trial should be granted, other cases hold to the contrary view. We deem it unnecessary to examine these authorities at length, for, even in the absence of statutory provision, it has long been the rule in federal and in many state jurisdictions that the determination of the question whether two or more persons charged jointly with a felony shall be tried separately rests in the discretion of the trial court. On the record presented in this case, the trial court did not abuse its discretion in denying the severance.

Appellant argues that, in view of the manner in which the various confessions of the two defendants were taken, and in the light of the way in which the testimony went into the record in the trial court, it was impossible for him to safeguard his interest in any way, and that it was "humanly impossible" for any jury to keep in mind the relationship of the two defendants, and the portions of the testimony that may or may not have been relevant to the case of either. For these reasons, he contends that his case was prejudicially affected, and that the denial of separate trials resulted in a gross abuse of discretion. [2] Assuming that we may review the question whether or not the court abused its discretion in denying the demand for separate trials, that can only be done upon the basis of the showing made when the demand was presented, not upon what transpired afterward. While, from the record of the trial, it does appear that there were many conflicts in the testimony and many instances where the trial court was required to limit the evidence in its application to one or the other of the defendants, that is commonly the situation which arises when two or more defendants are jointly tried, and in the present case the rights of each of the appellants were carefully preserved.

Appellant Hard entirely sets aside the direct evidence of the defendant Erno, and contends that there is no testimony that it was he who killed Skeen, and no evidence other than

that of the flight after the killing to show that he was an accomplice.  **[3]**  Whether or not Hard killed the decedent, and whether or not the defendants were jointly concerned in the commission of the crime, and the murder of Skeen was the ordinary and probable effect of a common purpose, were questions of fact to be determined by the jury from all the evidence.  (*People* v. *Bringhurst,* 192 Cal. 748, 751 [221 Pac. 897].)  **[4]**  If the murder was committed by either, in carrying out some common design, each was equally guilty of the crime, whether or not he fired the fatal shot. Appellant Hard challenges the sufficiency of the evidence to prove either a conspiracy, as contended by the district attorney, or that he was implicated in the murder.  He argues that the only testimony connecting him with the offense was that of defendant Erno, who, he contends, was wholly discredited and impeached.  Many of the contentions now made by appellant Hard were made in fact or in substance in *People* v. *Matthew,* 194 Cal. 273 [228 Pac. 424], and were disposed of adversely to the position of this appellant.  The relations of the two defendants from the time they left Los Angeles, the circumstances surrounding the murder, the looting of the ranch by the defendants, and other joint acts of the two occurring after the homicide, may not directly prove a conspiracy, but, from the evidence of these circumstances, there was sufficient to warrant the jury in believing that there was a concert of action between them.  (*People* v. *Matthew, supra.*)  Appellant Hard admits in his brief that there is practically no conflict in the testimony as to what the defendants did from the time they left Los Angeles ''up to the evening when the murder occurred.''  The conflicts in the testimony relating to the actual killing, and as to any other matters, arising from the stories told by the two defendants, merely presented a question of the weight and credibility to be given to the evidence in the case.  **[5]** Whether or not appellant's codefendant Erno was so far discredited and impeached as to render his testimony unbelievable and of no weight, was a question addressed to the consideration of the jury.  On the entire record we conclude that the evidence supports the verdict.

**[6]**  Premeditation, or malice aforethought, is a necessary ingredient to the crime of murder.  It is argued on behalf of appellant Hard that no premeditation on his part has

been shown. It is not necessary that there should be express evidence of a deliberate purpose to kill. It may be inferred from proof of such facts and circumstances in the case as will reasonably warrant an inference of its existence, and the making of such inference is a matter exclusively within the province of the jury. (*People* v. *Mahatch,* 148 Cal. 200, 202 [82 Pac. 779] ; *People* v. *Machuca,* 158 Cal. 62, 64 [109 Pac. 886] ; *People* v. *Bellon,* 180 Cal. 706, 710 [182 Pac. 420].)

[7] It is next contended by the appellant Hard that the trial court erred in refusing to admit testimony material to his defense. Neither Hard nor Erno was called as a witness for the prosecution. Each took the stand in his own behalf, Erno testifying first. As part of the case for Hard, he sought to show by his own testimony and by that of other witnesses that prior to the trial defendant Erno had made statements tending to incriminate himself and exculpate Hard. The prosecution did not object, but, on objection of counsel for Erno, the court rejected the testimony. Appellant Hard contends that the evidence was competent to discredit Erno's testimony that it was Hard who did the shooting, and tended to prove that it was he, and not Hard, who committed the crime. This court has held that it is always proper to show that some other person, and not the defendant, committed the crime with which the latter is charged. (*People* v. *Mitchell,* 100 Cal. 328, 333 [34 Pac. 698].) But we do not understand the rule to extend further than to mean that such showing should be made in the proper manner, and in accord with the ordinary rules of evidence. No foundation was laid for impeaching Erno's testimony, if that was the theory on which it was sought to introduce the statements. Erno was on the stand before Hard testified, and was cross-examined minutely by Hard's counsel. According to the admission of Hard's counsel, in answer to a question put by the trial court, it directly appears that certain of the conversations were not testified to by anyone, and appellant has not pointed out where, at any time, Erno was asked if he had made the purported incriminating statements. We have examined the record in following out appellant's theory, urged on appeal, that the testimony would have shown that Erno, and not Hard, committed the murder, and are of the opinion that little, if any, of it would have that effect. Of the two instances complained of in which

the court struck out evidence already admitted, one related to a statement of a conclusion of the defendant Hard. Appellant contends that the other, the statement by Erno, on being informed that arraignment of the defendants had been postponed because of the absence of counsel, "Well, that will give me a day longer to live," was a statement showing a consciousness of guilt. Assuming that it was, it does not follow that Erno thereby intended to incriminate himself alone in the commission of the crime. At another time Hard was asked by his counsel if, on the way to Los Angeles, Erno made any statements to him in regard to the commission of the offense that he had not related. Hard replied in the affirmative, and his counsel asked, "What were they?" Objection was made and sustained, and counsel for Hard did not further offer to enlighten the court as to what he intended to show, other than to say that he proposed to rebut the testimony of Erno, without stating in what particular, and to "show fear on the part of the defendant Hard, that he had grounds to be afraid." Assuming that any part of the testimony which appellant might have introduced along the line indicated was material, and would have had the effect he now claims it would, he should have stated its purpose more fully and clearly to the trial court. We cannot, in the present state of the record, determine whether or not any substantial right of the appellant was prejudiced by the ruling. (*People* v. *McGann,* 194 Cal. 688, 694 [230 Pac. 169]; *People* v. *Ferdinand,* 194 Cal. 555 [229 Pac. 341].)

[8] The last point made by appellant Hard in support of his appeal is that the court erred in instructing the jury on the question of flight. It instructed the jury, in effect, that the flight of a person immediately after the commission of a crime, or after a crime has been committed with which he is charged, is a circumstance to be weighed by the jury as tending in some degree to prove a consciousness of guilt, and is entitled to more or less weight according to the circumstances of the particular case. It did not include in the instruction any admonition that the defendant must know that the crime has been committed, and that he is accused of having committed it. The instruction given in this case was criticised in *People* v. *Jones,* 160 Cal. 358, 369 [117 Pac. 176], as being a clear invasion of the jury's province in

weighing evidence, and for the further reason that it
omitted the essential qualification that, where flight can
be indicative of a guilty consciousness, the defendant must
know that he is charged with the crime. It was there
said that, where flight is unexplained, the giving of such
an instruction may be excused, though not justified, be-
cause it is within the power of the defendant to explain
it and he has not done so; but, where the defendant has
given a full explanation of his flight, it is for the jury
to say whether that explanation is true or not, untram-
meled by any instructions from the court to the effect
that the evidence is to be weighed by them as indicative of
guilt. Again, in *People* v. *Sainz,* 162 Cal. 242 [121 Pac.
922], this court admonished against the giving of any in-
structions on the subject of flight as an invasion of the prov-
ince of the jury to weigh the evidence. The exact question
was again under consideration in *People* v. *Lee Nam Chin,*
166 Cal. 570 [137 Pac. 917]. Mr. Justice Lorigan, with the
concurrence of two justices, held that while an instruction
on flight should contain the qualifications prescribed by the
court in *People* v. *Jones, supra,* it did not necessarily follow
that prejudicial error was committed simply because the in-
struction was lacking in a specific direction to the jury on
that subject. Three justices of the court refused to assent
to the doctrine that evidence of flight cannot be considered
unless there is a showing that the defendant knew, when he
fled, that he was charged with the crime. Justices Sloss,
Angellotti, and Shaw adhered to the rule that immediate
flight, in the absence of any accusation—in advance, perhaps,
of the possibility of an accusation, formal or informal—may
afford very persuasive evidence of a consciousness of guilt.
(1 Wigmore on Evidence, 2d ed., sec. 276.) In this case the
defendant knew the crime had been committed. No other
inference can be reasonably drawn from the evidence but
that he knew he would be charged with the crime. The jury
were entitled to believe, from all that occurred before and
after the crime was committed, that the defendant was a
party to its commission. We are satisfied, therefore, that
no prejudicial error was committed through the giving of the
instruction, although we repeat it should not have been given.

[9] The appellant Erno makes but one assignment of
error on this appeal. During the trial of the case, and at

the close of the court session on February 7th, Mr. Mc-
Namara, one of the counsel for the defendant Hard, inti-
mated to the court that an urgent message had been received
calling him to his home. According to the reporter's tran-
script, at that point the court and respective counsel held a
consultation in open court, whereupon it was stipulated and
agreed "by and between the court and respective counsel
that the court take an adjournment until Monday, February
18, 1924, at ten o'clock A. M." Such adjournment was
thereupon taken. When court convened on February 18th,
the court stated that Mr. J. M. Wapner, who had theretofore
represented the defendant Erno, had returned to Los Angeles
during the adjournment of the court; that he was ill, and
would not be able to return to take up the case, and that he
had asked the court to appoint someone to defend Erno in
his place. Erno, not having heard anything from his coun-
sel, the court thereupon appointed other counsel for him,
and they have since represented his interests. We are some-
what at a loss to understand the point made by the appellant.
It seems to be that the court erred in permitting the jury to
separate during the period from the 7th of February to the
18th.

It is not claimed that the trial court had placed the jury
in charge of an officer, and, under our statute (Pen. Code,
sec. 1121), the jury are permitted to separate at adjourn-
ment and recess until the case is submitted to them for de-
cision, unless the court, in its discretion, orders them to be
kept together in charge of an officer during the progress of
the trial. (*People* v. *Witt*, 170 Cal. 104, 109 [148 Pac. 928].)
[10] The record, as we have already indicated, discloses
that the adjournment, for a period of ten days, was taken
with the full consent of all the counsel in the case. The
only complaint the substituted counsel for Erno seem to
make in the matter is that during the long recess some of
the jurors might have been exposed to undue influence
against the defendants, created by the press and newspapers
published in the vicinity of Yreka where the trial was held.
If it were a fact that the jury had been improperly in-
fluenced from such sources, it was not made to appear. It
nowhere appears in the record in what manner, or how, the
action of the court, in granting the long continuance, re-
sulted to the detriment of Erno, or tended to prevent him

from having a full, fair and impartial trial. The burden was upon him to show that he was prejudiced by the action so taken. (*People* v. *Elgar*, 39 Cal. App. 78, 80 [178 Pac. 168].)

[11] We are satisfied, in the case at bar, there was sufficient evidence to warrant the jury, within the rule we have stated, in inferring the existence of a deliberate intent on the part of the defendants to kill young Skeen. The jury has so found, and, by its failure to recommend any other punishment, left it to the court to impose the highest penalty. The finding of the jury was approved by the trial court on motion for a new trial. The findings of the jury and the trial judge are conclusive upon the subject, and upon this court, as we may disturb a finding only when we can say, as a matter of law, that there was no evidence to support it. (*People* v. *Mahatch, supra.*) That is not this case.

The judgment of conviction of each defendant and the order denying the motion of each defendant for a new trial are, and each is, affirmed.

Lawlor, J., Shenk, J., Richards, J., Seawell, J., and Myers, C. J., concurred.