[Crim. No. 1762. First Appellate District, Division Two.—December 8, 1933.]

THE PEOPLE, Respondent, v. SAMUEL THOMAS, Appellant.

R. R. Sischo for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

SPENCE, J.—Defendant Sam Thomas and one Joseph Matlock were jointly charged with the murder of John Buck, a police officer. Defendant Sam Thomas moved for a separate trial, which motion was denied. The jury found Joseph Matlock guilty of murder in the first degree with recommendation of life imprisonment and found defendant Sam Thomas guilty of murder in the second degree. From the judgment of conviction and the order denying his motion for a new trial, defendant Sam Thomas appeals.

Appellant contends: (1) That the evidence was insufficient to sustain his conviction; (2) that the trial court erred in giving and refusing certain instructions; (3) that the trial court erred in .denying appellant's motion for a sep-

arate trial; and (4) that the trial court erred in denying appellant's motion for a new trial. We shall consider these contentions in the order stated.

Officer Buck was fatally shot by Matlock in the city of San Jose on the evening of February 27, 1933. The shooting immediately followed the stopping of a Ford automobile by the officers, in which automobile appellant and Matlock were riding. The prosecution charged both men with murder upon the theory that they were co-conspirators and that the shooting was done in furtherance of the conspiracy. We will outline some of the evidence upon which the prosecution relied to sustain that theory.

Appellant, who resided in Mariposa County, was a nephew of his co-defendant Matlock. The latter had a criminal record, having suffered his last conviction of a felony in 1925. He was released upon parole in 1932 with five years yet to serve. Following his release he worked in Mariposa County for a time and subsequently worked in Monterey. On or about February 19, 1933, he arrived at appellant's home in Mariposa County, where he remained for two nights. Thereafter he and appellant went to Colterville, where Matlock obtained a pistol from a storekeeper. They then proceeded to Sonora, where appellant, on February 22d, purchased a Ford sedan upon which appellant made a down payment. After purchasing the car appellant and Matlock drove to Red Bluff, where they picked up Matlock's paramour and her small child and they all drove to San Jose, arriving there on February 23d. On February 25th appellant and Matlock went to a second-hand store in San Jose where appellant purchased a revolver. On the evening of February 26th appellant and Matlock held up the occupants of a Japanese ice-cream parlor in San Jose and obtained the sum of $5.05, which they divided between them upon returning to their auto camp on the highway leading to Oakland. In perpetrating this robbery Matlock held a pistol on the persons present while appellant searched their pockets and rifled the cash register. They remained in the auto camp throughout the next day and at 9 o'clock in the evening, appellant and Matlock again drove into San Jose. As they were passing a gasoline station in the vicinity of Thirteenth and Julian Streets, two police officers in a radio patrol car observed that they were driving very slowly and

that both appellant and Matlock were carefully scrutinizing the gasoline station. This aroused the officers' suspicions and they followed while appellant and Matlock drove along the following course: From Thirteenth Street they turned west into Julian—proceeded along Julian to Twelfth Street, where they turned south—proceeded along Twelfth Street to Santa Clara, where they turned west—proceeded along Santa Clara to Eleventh Street, where they turned south—proceeded along Eleventh Street to San Antonio, where they turned west—proceeded along San Antonio to Seventh Street, where they turned north—proceeded along Seventh Street to San Fernando, where they turned west—proceeded along San Fernando past First Street to Market, where they turned north—proceeded along Market to Post Street, where they turned west. Having memorized the license number of the Ford, the officers signaled the occupants to stop in order to question them. Appellant, who was driving, stopped the Ford, while the police car stopped just behind and to the left. Officer Buck got out on the right side of the police car, went behind appellant's car and along the right side thereof. According to the testimony of Officer Moon, who had been driving the police car, the firing started immediately after Officer Buck had gone around to the right side of appellant's car. Officer Buck dropped to the pavement mortally wounded and appellant's car started forward. Officer Moon got out of the police car and started firing at Matlock, who was running to catch up with appellant's car. Four shots struck Matlock, who dived on the running-board of appellant's car and fell between the motor and the fender. Appellant drove away, making several turns before stopping to assist Matlock into the car. Appellant and Matlock then drove to their auto camp and after Matlock's paramour had bandaged his wounds, they all got into the Ford car and proceeded toward Oakland. On the road they were overtaken by a radio patrol car. The officers ordered appellant to stop and appellant obeyed. Appellant got out first and was ordered to get the other occupants out. After assisting Matlock, appellant took the pistol which he had purchased in San Jose two days before and placed it on top of the automobile. The police did not notice this and the pistol apparently fell to the ground when the Ford car was turned around. It was found there later by a bus

driver and was subsequently identified by appellant. Appellant stated that, "When he seen that Matlock was not going to shoot it out with the second pair of officers they encountered, that he put his gun that was loaded on top of the car."

■ In contending that the evidence was insufficient to sustain his conviction appellant argues that "there was only one robbery perpetrated, and that at the time of the shooting the appellant was not engaged in the commission of any felony or the perpetration of any crime, but, on the contrary, the only robbery perpetrated had been completed, and the shooting of Officer Buck was an independent act of the defendant Matlock and not in furtherance of the common design or conspiracy between the parties, to-wit, the robbery of the Japanese store". In other words, appellant's argument is based upon the claim that the evidence was insufficient to show that the conspiracy between the parties extended beyond the single robbery which had already been perpetrated. In our opinion, however, the evidence was ample to support the inference that the conspiracy between appellant and Matlock was far broader in its scope and that it included a common design to commit not only one but a series of robberies and to resist arrest with the weapons with which they armed themselves. The question of the scope of the conspiracy was therefore essentially a question for the jury to determine. As was said in *People* v. *Kauffman*, 152 Cal. 331, at page 335 [92 Pac. 861], "If as matter of law, it can be said that the criminal combination embraced no more than this contemplated burglary, and that the shooting of Robinson was not within the reasonable and probable consequences of the common unlawful design, it would follow that no case was made out against the appellant. But whether or not the act committed was the ordinary and probable effect of the common design or whether it was a fresh and independent product of the mind of one of the conspirators, outside of, or foreign to, the common design, is a question of fact for the jury. (*Bowers* v. *State*, 24 Tex. Crim. App. 543 [5 Am. St. Rep. 901, 7 S. W. 247]; *Spies* v. *People*, 122 Ill. 1 [3 Am. St. Rep. 320, 12 N. E. 865, 17 N. E. 898]), and if there be any evidence to support the finding of the jury on this question, its determination is conclusive." In *People* v. *Woods*, 147 Cal. 265, the

court said at page 272 [81 Pac. 652, 655, 109 Am. St. Rep. 151]: " . . . the jury would have been justified in concluding that a part of the common design was to resist arrest by the use of the pistols with which the defendants armed themselves."

■ Appellant lays great stress on the testimony offered by the defense. This testimony tended to show that no conspiracy existed; that the robbery on the previous night was the independent act of Matlock, while appellant through fear merely served as Matlock's pawn; that the shooting of Officer Buck was the independent act of Matlock; and that appellant was not armed either at the time of the robbery or at the time of the shooting. This evidence was submitted to the jury, but was apparently disbelieved by them. The jurors were entitled to base their verdict upon the reasonable inferences to be drawn from the testimony offered by the prosecution and were not bound· to accept the evidence offered by the defense in opposition to such inferences. (*People* v. *Turco,* 104 Cal. App. 59 [285 Pac. 349]; *People* v. *Sotelo,* 102 Cal. App. 688 [283 Pac. 388].)

■ Appellant contends that certain instructions given to the jury were misleading. While one of the instructions complained of may be subject to criticism, a reading of the entire charge shows that the jury could not have been misled thereby. The trial court very fully and fairly instructed the jury on the subject of conspiracy, clearly instructed the jury that it was their duty to determine the guilt or innocence of each defendant separately and also instructed the jury that the question of whether a conspiracy existed and, if so, the scope thereof, were matters for the jury to determine. The jury was further cautioned that the trial court was not intimating that any conspiracy did exist or that any act was done within the scope of any conspiracy. Taking the instructions as a whole no juror could have gained the impression that appellant could be held responsible for the act of Matlock unless such act was done within the scope of an existing conspiracy and in furtherance thereof. ■ Appellant further complains of the refusal of the trial court to give certain requested instructions. In so far as these instructions were proper they were amply covered by the instructions given. Furthermore these proposed instructions assumed that if any conspiracy existed, it was

for the perpetration of a single robbery and terminated upon the completion of the single offense. It may also be noted that one of the instructions contained the phrase "within the *res gestae* of the intended crime", but no explanation of the meaning of the term "*res gestae*" was included therein. Section 185 of the Code of Civil Procedure requires that proceedings in our courts be conducted in the English language and this requirement should be strictly observed when instructing juries. The term "*res gestae*" is not a term of which the meaning is generally known and its use in a proposed instruction without explanation would alone justify the refusal of such instruction.

 We find no error in the trial court's ruling denying appellant's motion for a separate trial. Since the amendment in 1921 of section 1098 of the Penal Code, defendants jointly charged are no longer entitled to separate trials as a matter of right. The granting or refusing of separate trials now rests largely, if not wholly, within the discretion of the trial court and it is well settled that the ruling of the trial court denying a motion for a separate trial will not be disturbed in the absence of a clear showing of an abuse of discretion. (*People* v. *Dowell,* 204 Cal. 109 [266 Pac. 807]; *People* v. *Perry,* 195 Cal. 623 [234 Pac. 890]; *People* v. *Erno,* 195 Cal. 272 [232 Pac. 710]; *People* v. *Roderick,* 118 Cal. App. 457 [5 Pac. (2d) 463]; *People* v. *Burdg,* 95 Cal. App. 259 [272 Pac. 816]; *People* v. *Nelson,* 90 Cal. App. 27 [265 Pac. 366]; *People* v. *Wilson,* 76 Cal. App. 688 [245 Pac. 781]; *People* v. *Swoape,* 75 Cal. App. 404 [242 Pac. 1067].) Appellant's motion was in written form and specified four grounds: (1) That Matlock's confession would be introduced in evidence and would be prejudicial to appellant; (2) that on a joint trial, appellant's right to exercise peremptory challenges would be limited; (3) that each of the defendants had his own theory of defense and that said theories were conflicting; and (4) that defendants had recently quarreled over their conflicting views on the conduct of the trial. Practically all of these grounds were urged in support of the motions for separate trials made in the cases above cited, but they were held insufficient to show any abuse of discretion in denying

the motions. We find no abuse of discretion in the present case.

■ The last contention of appellant relates to the denial of his motion for a new trial. No grounds other than those already discussed were urged in support of said motion and it follows that the motion was properly denied.

The judgment and order denying the motion for new trial are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 6, 1934.