[Crim. No. 4151. In Bank.—August 24, 1938.]

THE PEOPLE, Respondent, v. WESLEY E. EUDY et al., Appellants.

Elvin F. Sheehy, Ben D. Frantz, Archibald D. McDougall, Horace E. Dunning and Daniel E. Weyand for Appellants.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

EDMONDS, J.—The five defendants in this case were jointly charged with the crime of murder. One of them, Robert Lee Cannon, pleaded not guilty; the four others pleaded not guilty and also not guilty by reason of insanity. The issues joined by the pleas of not guilty were presented to a jury in a trial of all defendants. The jury found each of them guilty. Thereafter each of the four who pleaded not guilty by reason of insanity moved the court for a separate trial upon that issue. This motion was denied and upon trial each was found sane at the time of the commission of the offense. The defendants have appealed from an order denying them a new trial and also from the judgment subsequently entered imposing the death penalty.

The crime of which the defendants stand convicted was committed on September 19, 1937. All of them were then inmates of Folsom State Prison. Clarence Larkin, the warden of the institution was in his office, located just off the prison yard, for the purpose of interviewing prisoners who wished to see him. Each convict waiting to see the warden was allowed to enter this office as his turn came. When the defendant Eudy entered, six other convicts bearing knives and a pistol rushed into the office from the yard. They overpowered the warden and the captain of the guard, who were both unarmed, and marched them into the yard as hostages in an attempt to escape. There two of the convicts were shot and killed by guards in towers on the prison wall. Warden Larkin was then fatally stabbed by the five remaining prisoners; and in a melée between guards and prisoners, in which the latter were subdued, a guard also received injuries from which he died.

The defendants' first point upon which they rely for reversal is that the trial court erred in disallowing certain challenges for cause made by them during the *voir dire* examination of jurors and in later refusing additional peremptory challenges. The record shows that after the defendants had used all of their peremptory challenges they requested three additional ones to replace those which had been exercised in excusing jurors challenged for cause. The court allowed one additional peremptory challenge, and then, on its own motion, excused the one remaining juror whom the defendants had challenged for cause. Two more jurors were then examined and accepted without objection.

The defendants complain that the jury as then constituted was unsatisfactory to them because it included one juror who would have been excused had the court granted additional peremptory challenges and two jurors whom the defendants could not remove in the absence of evidence showing facts upon which a challenge for cause would lie. They insist that each of the five jurors who was unsuccessfully challenged for cause disclosed a state of mind which would have prevented him "from acting with entire impartiality and without prejudice to the substantial rights of either party". (Sec. 1073, Pen. Code.) However, the record shows that although the prospective jurors admitted that they had read of or heard about the death of Warden Larkin and believed that the con-

victs concerned had entered into a conspiracy to escape from prison, each said with positiveness that he could and would decide the case solely upon the evidence introduced in the trial.

One who has formed or expressed an opinion upon the merits of a criminal case is not thereby disqualified from serving as a juror in the trial of the defendant "provided. it appear to the court, upon his declaration under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters to be submitted to him". (Sec. 1076, Pen. Code.) Whether the challenged person met the requirements of the law was a question for the decision of the trial judge. The fact that all of the answers of each person under examination were not entirely consistent only raised a conflict in the evidence concerning the state of mind of the prospective juror. Upon such a conflict the determination of the trial judge is conclusive upon an appellate court. (*People* v. *Craig,* 196 Cal. 19, 25 [235 Pac. 721]; *People* v. *Edwards,* 163 Cal. 752, 757 [127 Pac. 58].)

Another point raised by the defendants is that the court erred in denying their motions for separate trials on the issue of insanity. They say that it was difficult, if not impossible, for the jurors and the trial judge to keep the evidence concerning each defendant separate in thought from that relating to the others. Their counsel concede that where several defendants are jointly tried upon their pleas of not guilty, there is no statutory provision or judicial authority for severance of trial upon their pleas of not guilty by reason of insanity. They rely, however, upon the English case of *Rex* v. *Lonsdale,* 47 Times L. Rep. 80, in which the court held that a defendant charged with being an habitual criminal should be tried separately upon that issue and not with any other person.

In this state, the court in its discretion may order a separate trial of one or more defendants charged with a public offense. (Sec. 1098, Pen. Code.) But a separate trial is not a matter of right. (*People* v. *Rocco,* 209 Cal. 68 [285 Pac. 704]; *People* v. *Tinnin,* 136 Cal. App. 301 [28 Pac. (2d) 951].) Even where it appears that evidence will be admissible against one of several defendants which the jury cannot consider as against the others the law does not require separate trials

upon demand therefor. (*People* v. *Perry,* 195 Cal. 623 [234 Pac. 890] ; *People* v. *Booth,* 72 Cal. App. 160 [236 Pac. 987] ; *People* v. *Erno,* 195 Cal. 272 [232 Pac. 710].)

■ The defendants in this case acted together in attacking the officers of the prison. Apparently, they had carefully planned what each should do. What was said and done at that time was evidence for the jury to consider in determining the sanity of each of the defendants. All of them had been inmates of the institution for some time and had been under the same prison discipline. Although the mental and social background of each of them was different, issues of much greater complexity are commonly submitted to a jury. ■ The determination whether a motion for severance of trial should be granted always rests within the sound discretion of the trial judge. There can be no clearly defined rule for determining when a defendant is entitled to a separate trial because the exercise of discretion means that the decision must be based upon a just and proper consideration of the particular circumstances which are presented to the court in each case. Only where an abuse of discretion is shown will the ruling of the trial court be disturbed upon appeal. (*People* v. *Perry, supra; People* v. *Tinnin, supra.*)

■ In the present case the defendants have failed to show any inconsiderate action. Furthermore, when the motion for severance was made no facts were stated in support of it and, so far as the record shows, the trial judge was not apprised of the nature or extent of the evidence that each defendant expected to offer to prove insanity. An appellate court, in determining the propriety of a ruling upon a motion for severance of trial, will look only to the facts presented to the court at the time the motion was made and not to events that occurred afterward. (*People* v. *Erno, supra; People* v. *Friday,* 18 Cal. App. (2d) 197 [63 Pac. (2d) 303] ; *People* v. *Pierson,* 139 Cal. App. 734 [34 Pac. (2d) 755].) The record fully supports the order which was made.

■ The defendants next contend that the trial judge committed prejudicial error when he made a statement concerning the defense of insanity which, it is claimed, exceeded the bounds of fair comment. Although he told the jurors that an ingenious counterfeit of mental infirmity should never furnish immunity to guilt he also said that the defense of

insanity should be weighed fully, fairly and justly. As a part of his remarks he admonished the jurors that you "are the sole judges of all questions of fact and credibility of the witnesses; you are not to consider any comment of the Court upon the evidence and credibility of witnesses as binding upon you or necessarily to be followed by you. The Court does not intend that the judgment of the Court should be substituted for that of the Jury and you should not consider yourselves bound or influenced against your own judgment by any comment of the Court. Your verdict must represent and reflect your own independent judgment."

Taken as a whole the statement amounts to nothing more than fair and general comment which a trial judge is now authorized to make. (Art. VI, sec. 19, Cal. Const.) ▮ Although such remarks should be temperate and unemotional in tenor, he is not confined to specific comments. The right may be exercised in the manner which the judge deems "necessary for the proper determination of the case", and is not confined to a colorless recital of facts. (*People* v. *De Moss,* 4 Cal. (2d) 469 [50 Pac. (2d) 1031]; *People* v. *Ottey,* 5 Cal. (2d) 714 [56 Pac. (2d) 193]; *People* v. *Gosden,* 6 Cal. (2d) 14 [56 Pac. (2d) 211].) Even an expression of his opinion concerning the guilt or innocence of a defendant has been held to be within the scope of comment which may be made, provided the province of the jury is not invaded.

▮ The defendant Kessell also urges that the evidence was insufficient to support the verdict that he was sane at the time of the offense and that the court erred in its rulings on certain evidence pertaining to his sanity. This defendant produced eleven witnesses, all fellow-convicts, who testified concerning his conduct during several months preceding the attempted prison break. Against this evidence was not only the presumption of sanity but also the testimony of five medical experts, each of whom stated that in his opinion the defendant was legally sane at the time he committed the offense. It is true that in answer to a hypothetical question embodying the facts testified to by Kessell's fellow-convicts, these experts testified that if a man had such characteristics he would be considered insane. However, the jury was at liberty to refuse credence to the testimony of the lay witnesses. The doctors made careful clinical examinations of the defendant

after the crime was committed and none of them found the symptoms referred to by the prisoners who testified in behalf of Kessell.

Several rulings of the trial court concerning the introduction of evidence have also been assigned as error. These have been examined and considered but they do not require detailed discussion. While some of them may be open to question none presents points which would justify a reversal of the judgment. The trial as a whole was conducted with fairness and impartiality, and all counsel were allowed full latitude in the examination of witnesses.

The judgment and the order denying a new trial are, and each of them is, affirmed.

Curtis, J., Shenk, J., Waste, C. J., Seawell, J., and Langdon, J., concurred.