[Crim. No. 2434.   Third Dist.   Jan. 27, 1954.]

THE PEOPLE, Respondent, v. JOHN K. PARKER, Appellant.

868

Stephen P. Galvin for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

BEDEAU, J. pro tem.*—In an information filed by the district attorney of Merced County, appellant John K. Parker and Jesse Jack Wilmoth were jointly charged with two crimes. In count one of the information they were charged with violating section 4534 of the Penal Code, it being alleged that appellant and Wilmoth on or about the 3d day of August, 1952, "did wilfully, unlawfully and feloniously assist a prisoner, to-wit: Louis David Lyda, who was confined in the

*Assigned by Chairman of Judicial Council.

Merced County Jail and in the lawful custody of the sheriff of the County of Merced, to escape.'' The second count charged a violation of section 32 of the Penal Code, it being alleged that appellant and Wilmoth on or about August 3, 1952, ''did wilfully, unlawfully and feloniously, and with knowledge that the crime of escape, a felony, was committed by Louis David Lyda, harbor, conceal and aid said Louis David Lyda . . . [to] escape from trial, conviction, and punishment for said felony.''

They were jointly tried before a jury, which returned verdicts of guilty against both defendants on each count. A motion for a new trial was made and denied and appellant and Wilmoth were each sentenced to state prison for the term prescribed by law on each count, sentences to run concurrently. It is only the appeal of Parker that is before us at this time for consideration.

The case arises out of the following facts, which are stated in a light most favorable to respondent. Appellant Parker, his wife (sister of Wilmoth), Wilmoth, and one Louis David Lyda had been friends for a long time in Oklahoma, and had traveled from Oklahoma to California in appellant's automobile. On July 21, 1952, they were motoring through the city of Merced with Lyda driving. On that day the three men were arrested. Lyda was charged with a violation of Vehicle Code, section 502 (drunk driving), and appellant and Wilmoth were charged with violation of a Merced city ordinance prohibiting the presence of intoxicated persons in and about automobiles. On July 22, 1952, they pleaded guilty in the city court. Lyda was fined $275, in default of which he was to serve 137½ days in the county jail. Appellant and Wilmoth were each fined $25 and in default thereof, were to serve one day in the county jail for every $2.00 of the fine not paid. Being unable to pay the fines, all three were confined in jail. On August 2, 1952, after appellant and Wilmoth had served approximately 11 days, they raised sufficient money to pay the balance of their fines and were released on that day about 5 to 5:30 p. m. Lyda was still confined in jail; he had 126 more days to serve. By that time he had become a trusty with certain limited privileges. As such trusty he was released from his cell about 6:30 to 7 o'clock each morning and permitted to go in and out of the jail, but the distance he could go was definitely fixed and well known to him. He was required to stay within the curb lines around the jail and the jail side of the courthouse.

Later, on the same day, appellant and Wilmoth returned to the jail and were seen talking to Lyda and other trusties. The following morning, August 3d, appellant and Wilmoth returned about 7:30 and again about 10:15. On each occasion they talked to Lyda. Lyda was seen for the last time about the jail around 11 a. m. Shortly thereafter, around 11:30 a. m., Lyda was wanted to do an errand, but could not be found. A search was made for him in the jail building and in the area to which he was confined as a trusty, but he was not there. A general search was then instituted for appellant, Wilmoth and Lyda. Some time thereafter appellant was found near his automobile at the county hospital where his wife was confined. When interrogated there, he denied any knowledge of the whereabouts of Wilmoth or Lyda. He was taken to the sheriff's office where he was again interrogated. He then told the officers that Lyda and Wilmoth were at the Santa Fe overpass on Highway 140, about a mile or two from Merced. The officers went immediately to that place and found both Wilmoth and Lyda, and both were arrested. Both appellant and Wilmoth made statements thereafter which were admitted in evidence over the objections of defense counsel. Appellant did not take the witness stand, but both Wilmoth and Lyda were called as witnesses by the defendants.

As ground for reversal, appellant first contends that the trial court committed error in denying him a separate trial. The clerk's transcript discloses the following: On September 15th appellant and his codefendant, Wilmoth, appeared in court with their counsel, the public defender, and their arraignment was continued to September 29th; on September 29th they appeared with the public defender and were arraigned and the case was set for trial for October 24th; on October 20th they appeared again in court at which time the public defender was relieved of his duties and the court appointed S. P. Galvin as counsel for both defendants; on October 21st, they appeared with their counsel and the court reset the trial for October 27th; on October 27th, with the defendants and their counsel present, the court again reset the trial for October 31st. On October 31st, and just before the commencement of the trial, appellant and Wilmoth, through their counsel, for the first time requested a separate trial, stating as grounds therefor that there would be a conflict in the interest of the two defendants and that it would be disadvantageous to go to trial with but one counsel.

■ Section 1098, Penal Code, provides in part: "When two or more defendants are jointly charged with any public offense . . . they must be tried jointly, unless the court order separate trials." Under that section a joint trial is contemplated, and a separate trial is a privilege and not a matter of right. (*People* v. *Rocco,* 209 Cal. 68, 73 [285 P. 704]; *People* v. *Baa,* 24 Cal.2d 374, 377 [150 P.2d 1].) ■ The question of the right to a severance of trial is addressed to the sound discretion of the trial court, with which decision an appellate tribunal will not interfere except upon a clear abuse of discretion. (*People* v. *Bundte,* 87 Cal.App.2d 735 [197 P.2d 823]; *People* v. *Baa, supra*; *People* ·v. *Eudy,* 12 Cal.2d 41, 45 [82 P.2d 359]; *People* v. *Isby,* 30 Cal.2d 879, 897 [186 P.2d 405]; *People* v. *Goold,* 215 Cal. 763 [12 P.2d 958]; *People* v. *Erno,* 195 Cal. 272, 277 [232 P. 710]; *People* v. *King,* 30 Cal.App.2d 185 [85 P.2d 928].)

■ There is no abuse of discretion in refusing to grant a demand for separate trials because damaging testimony admissible against one defendant, but not against the other, may be received in evidence. (*People* v. *Thomas,* 135 Cal.App. 654 [27 P.2d 765]; *People* v. *Isby, supra*; *People* v. *Erno, supra*; *People* v. *Dowell,* 204 Cal. 109 [266 P. 807]; *People* v. *King, supra*; *People* v. *Perry,* 195 Cal. 623 [234 P. 890]; *People* v. *Bennett,* 93 Cal.App.2d 549 [209 P.2d 417].) In *People* v. *Thomas, supra,* practically all the reasons advanced in this case for a separate trial were there advanced. The order denying a separate trial was upheld by the appellate court which said: "We find no error in the trial court's ruling denying appellant's motion for a separate trial. Since the amendment in 1921 of section 1098 of the Penal Code, defendants jointly charged are no longer entitled to separate trials as a matter of right. The granting or refusing of separate trials now rests largely, if not wholly, within the discretion of the trial court and it is well settled that the ruling of the trial court denying a motion for a separate trial will not be disturbed in the absence of a clear showing of an abuse of discretion."

Appellant relies principally upon *People* v. *Lanigan,* 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176], but the factual situation there was entirely different. In that case the defendant was forced to elect on the morning of the trial, either to represent himself, which he stated he was unable to do, or to accept an attorney whom he did not want and with whom he had no opportunity to consult and prepare for trial.

In this case counsel for defendants had full opportunity to consult with appellant and to investigate and prepare for trial. No claim is made that appellant's counsel was not prepared or that appellant was not properly represented. On the record presented in this case the trial court did not abuse its discretion in denying appellant's motion for a separate trial.

Appellant's major contention is that the evidence is insufficient to support the verdicts and judgments on both counts. Interwoven with this contention is his claim that the trial court erred in allowing in evidence appellant's admissions and confessions without sufficient proof of the corpus delicti.

To authorize the reception and consideration by the jury of evidence of extrajudicial confessions and admissions of a defendant the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is required to establish the fact of guilt; and rather slight or prima facie proof is sufficient for such purpose. (*People* v. *Hudson,* 139 Cal.App. 543 [34 P.2d 741]; *People* v. *Mehaffey,* 32 Cal.2d 535, 545 [197 P.2d 12]; *People* v. *Ives,* 17 Cal.2d 459, 463 [110 P.2d 408]; *People* v. *Bollinger,* 196 Cal. 191, 200 [237 P. 25]; *People* v. *Selby,* 198 Cal. 426, 437 [245 P. 426]; *People* v. *McMonigle,* 29 Cal.2d 730, 738 [177 P.2d 745].)

The order of proof is in the discretion of the trial court. (*People* v. *Lopez,* 93 Cal.App.2d 664 [209 P.2d 439]; *People* v. *Crozier,* 119 Cal.App.2d 204 [258 P.2d 1029].)

But it is still an established and well settled rule that the corpus delicti of a crime must be established independently of the admissions or confessions of a defendant and a conviction cannot be had upon defendant's extrajudicial admissions or confessions without proof *aliunde* of the corpus delicti. (*People* v. *Rupp,* 41 Cal.2d 371 [260 P.2d 1]; *People* v. *Kaye,* 43 Cal.App.2d 802, 809 [111 P.2d 679]; *People* v. *Mehaffey, supra; People* v. *McMonigle, supra; People* v. *Corrales,* 34 Cal.2d 426, 429 [210 P.2d 843]; *People* v. *Cullen,* 37 Cal.2d 614 [234 P.2d 1]; *Hall* v. *Superior Court,* 120 Cal.App.2d 844 [262 P.2d 351].) The rule is clearly set forth in the Cullen case as follows: ''It is the settled rule, however, that the corpus delicti must be established independently of admissions of the defendant. Conviction cannot be had on his extrajudicial admissions or confessions without proof *aliunde* of the corpus delicti; but full proof of the body of the crime, sufficient to convince the jury of its conclusive character, is not necessary before the admissions may be received. A

prima facie showing . . . is all that is required. . . . The purpose of the rule is to protect the defendant against the possibility of fabricated testimony which might wrongfully establish the crime and the perpetrator.''

In the first count appellant was charged with assisting Lyda to escape. There is no evidence in the record, direct or indirect, other than appellant's admission, that appellant or anyone assisted or helped Lyda to escape or that assistance or help of any kind was furnished to or used by Lyda. The evidence is clear that Lyda did escape, but proof of that fact does not prove a necessary and essential element of the corpus delicti of the crime with which appellant was charged, tried and convicted, to wit: that Lyda was assisted or aided in his escape. (*People* v. *Ramos,* 106 Cal.App.2d 709 [235 P.2d 864]; 113 Cal.App.2d 631 [248 P.2d 423].) Lyda at the time of his escape was a trusty in the county jail. He had certain well defined privileges. One was that during the daytime he could leave the building that housed the jail, but the limits that he could go were definite and well known to him. Lyda was not confined in a cell. He needed no assistance to escape. It was a simple matter for him to escape without aid from any person. All he had to do was to walk unassisted beyond the boundary of his confinement with the intention to escape. The physical control over him was then ended by his flight beyond immediate active pursuit and his escape was complete.

Appellant's statements that were admitted in evidence were made to the authorities. Deputy Sheriff Rowe testified that in a conversation with appellant on August 6th, he stated that he and Wilmoth came to the jail about 8 or 9 a. m. on Sunday morning, and again about 12 noon, parked their car between the jail and the new courthouse and talked to Lyda; that he did not take Lyda with him at that time, but he saw Lyda in town about an hour later on 16th Street, and Lyda got into his automobile; Wilmoth was driving; Lyda wanted to leave town, and they took him to Cal Pac; that he, Parker, left Wilmoth and Lyda at the overpass on the Yosemite highway while he came into Merced; that he did not know that Lyda had escaped from jail until they were at Cal Pac. Another deputy sheriff, Jensen, testified that on October 20, 1952, he was present at a conversation in the district attorney's office and his best recollection was that appellant stated that he and Wilmoth picked up Lyda on the west side of the courthouse-jailhouse block and the witness indicated on a map the point that appellant had specified as the place

where they picked up Lyda around 11 a. m. Wilmoth also made admissions and statements to the officers, but the trial court limited its reception in evidence as binding only against Wilmoth and not appellant. Neither Lyda nor Wilmoth testified to any fact from which it could be inferred that Lyda was assisted in any way in his escape or that appellant or any other person assisted or helped him. It is apparent that the only evidence to establish the corpus delicti of the crime of assisting a prisoner to escape is the statement made by appellant to Jensen. There is no other evidence *aliunde* of the admission.

It is respondent's position that the surrounding circumstances—the fact that appellant and Wilmoth were related and had come to California from Oklahoma together; that they had visited the jail several times after their release and talked to Lyda; that Parker and Wilmoth had picked Lyda up at the county jail about noon on August 3d—justified the jury in drawing the inference that the escape of Lyda was a concerted action on the part of all three men, and that an essential part thereof was Parker's car being at the jail at the time Lyda was ready to leave. The essential fact in respondent's argument is appellant's admission to the witness, Jensen, that he picked Lyda up at the jail about noon on August 3d. Eliminating the admission and considering the other circumstances advanced, they amount only to conjecture, speculation and surmise that Lyda was assisted in any way or that appellant assisted him. There is no proof independent of appellant's admission of this essential element of the corpus delicti. The judgment of conviction on the first count is not sustained by the evidence.

■ The judgment of conviction on the second count, in which appellant is charged with harboring, concealing and aiding an escaped felon, is amply supported by the record. Lyda testified as to his duties as trusty and the limits of the area in which he was permitted, and of his visits and conversations with appellant and Wilmoth; that he left the county jail of his own accord about 10:45 a. m. and no one was with him; that it was his intention to leave the jail; that he had no conversation at any time with appellant and Wilmoth about his leaving; that he met appellant and Wilmoth in Merced about three blocks from the Merced County Jail; and that they took him in appellant's car to Cal Pac; that he did not tell appellant or Wilmoth he had left the jail without permission until they were at Cal Pac. Wilmoth stated that he

and appellant saw Lyda at the jail on August 3d about 7:30 a. m. and talked to him and other trusties; they did not see Lyda again until about noon on that day, when he was about a block and a half across the courthouse park, or three blocks from the jail; they were in Parker's automobile and he was driving; Lyda got into the car and they took him to Cal Pac; on the way back he and Lyda got out of the automobile at the Santa Fe overpass and stayed there while appellant drove into Merced; that he knew at that time that Lyda still had 126 days to serve. The evidence justified the jury in finding that when appellant and Wilmoth picked Lyda up they knew that he had escaped from the county jail, and that Lyda was taken out of the city of Merced by appellant and Wilmoth and left with Wilmoth at the overpass while appellant went to town to aid Lyda, with the intent that Lyda might avoid and escape from arrest, trial, conviction and punishment for his felony of escape. The corpus delicti was sufficiently established and the admissions of appellant were properly admitted.

Appellant's last contention is that he cannot be found guilty of both counts and by reason thereof the verdicts are inconsistent and void. Our conclusion that the judgment of conviction on the first count is not supported by substantial evidence and must be reversed makes this contention of appellant moot; there is therefore nothing before this court to decide.

This disposes of appellant's contentions. The judgment convicting defendant of the crime charged in count one is reversed, and the judgment of conviction and denial of appellant's motion for a new trial on the second count are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied February 8, 1954.