[Crim. No. 2694. In Bank.—October 28, 1924.]

## THE PEOPLE, Respondent, v. FRANK D. McGANN, Appellant.

[1] CRIMINAL LAW — MURDER — EVIDENCE — CROSS-EXAMINATION—RES GESTAE.—In a prosecution for murder the trial court properly sustained an objection to cross-examination by defendant's counsel of an eye-witness to the murder, the object of which examination was to show the action of the wife of defendant (who was with the deceased when the latter was shot by the defendant), immediately after the shooting, and also to show the position of the deceased's body after the defendant had gone some distance away, and then returned to the scene after the fatal shots were fired, the witness having been extensively cross-examined as to all matters observed by him, and the evidence sought not relating to the res gestae.

[2] ID.—SELF-DEFENSE—STATEMENTS OF DECEASED—STATE OF MIND—AGGRESSOR.—In a prosecution for murder in which there was a plea of self-defense there was no error in refusing to permit the wife of the defendant, who was a witness for the defense, to testify as to what was said by the deceased to her immediately before the shooting, when she and the deceased first saw the defendant, such conversation not having been heard by the defendant, counsel stating that the evidence was offered to show the state of mind of the deceased and as a declaration of intention, but no statement being made that the offer was to show who was the aggressor in the affray.

[3] ID.—SELF-DEFENSE—AGGRESSOR—ACTS OF DECEASED.—In case of a deadly encounter, where one party is killed and the survivor claims that the killing was done in self-defense, the question as to who was the aggressor is an issue of vital importance for the consideration of the jury; and all the acts and conduct of the deceased, either in the nature of overt acts of hostility or threats, communicated or uncommunicated, are proper evidence to be considered by the jury as shedding light, to some extent, upon the issue as to whether the deceased or the defendant was the real aggressor in the affray.

1. See 10 Cal. Jur. 1111; 10 R. C. L. 974.
3. See 13 Cal. Jur. 634.

[4] ID. — SELF-DEFENSE — AGGRESSOR—EXCLUSION OF EVIDENCE—LACK OF INJURY.—In a prosecution for murder, in which there was a plea of self-defense, the defendant was not injured by the refusal of the trial court to allow a witness for the defense to testify as to what was said by the deceased to her immediately before the shooting (it being claimed on appeal that the purpose was to show the deceased to have been the aggressor, although this purpose was not clearly disclosed on the trial), where the witness was permitted to testify fully as to other facts strongly tending to indicate that the deceased was the aggressor, and other evidence was introduced showing that the defendant had been told the deceased was a bad man and the defendant himself testified he had been so informed and believed he was in danger when he fired the shots.

[5] ID.—INSTRUCTION—CHARGE ON FACTS—MOTIVE.—Where a defendant, admitting the homicide, contends that it was necessary self-defense, and the evidence is conflicting as to who was the aggressor, and as to whether appearances at the time the fatal shot was fired would justify a reasonable man in believing himself in danger, an instruction that unknown motives exist, although not proven, and that a "thirst for blood" would be a motive urging the deed, is a charge on the ultimate question upon which the jury is to pass.

[6] ID.—MOTIVE—QUESTION OF FACT.—The question of a motive in a criminal prosecution is essentially a question of fact.

[7] ID. — INSTRUCTIONS — FACTS — ERROR—INJURY.—No more importance is to be attached to an error of the trial court in violating the provisions of the constitution forbidding instructions with respect to matters of fact than to any other, if no injury results from it.

[8] ID.—APPEAL—ERROR—PREJUDICE—PRESUMPTION.—Prejudice is no longer presumed, but substantial injury, as well as error, must be made affirmatively to appear before a judgment of conviction will be set aside.

[9] ID.—SELF-DEFENSE—SHOOTING AFTER TERMINATION OF NECESSITY. If the defendant in a murder case fired several shots into the body of the deceased after all necessity for the use of a deadly

---

4.　Admissibility of evidence of turbulent and dangerous character of victim of assault or homicide on issue of self-defense, notes, 124 Am. St. Rep. 1018; 4 Ann. Cas. 338; 8 Ann. Cas. 357; 11 Ann. Cas. 229; L. R. A. 1916A, 1245. See, also, 13 Cal. Jur. 693; 13 R. C. L. 822.

6.　Necessity of proving motive in prosecution for murder, note, Ann. Cas. 1912C, 236. See, also, 13 Cal. Jur. 685; 13 R. C. L. 761.

7.　See 2 Cal. Jur. 1026; 2 R. C. L. 256.

weapon in defending himself against attack had ceased, such action would not be legally justified on the theory of self-defense.

[10] Id.—Absence of Motive—Irresistible Influence—Erroneous Instruction—Lack of Prejudice.—In a prosecution for murder, where the evidence showed the defendant shot the deceased five times, and as to the first two shots defendant plead self-defense, but as to the last three shots contended that they were fired without malice and through some irresistible influence or motive unknown to him, and interposed the plea of insanity or mental weakness, the defendant was not substantially injured by an erroneous instruction on matters of facts with respect to his contention that he acted without motive and under an irresistible influence, where the jury found him guilty of manslaughter, thereby eliminating any question of malice.

[11] Id.—Temporary Aberration—Instruction.—Where the defendant introduced evidence in a murder case to show that he was controlled by some temporary aberration of the mind when he shot the deceased, it was not error to instruct the jury that the law does not recognize the plea of irresistible impulse, but that responsibility depends upon the question whether or not accused was conscious of and knew the nature of the act committed at the time of the commission. and whether it was wrong.

[12] Id.—Crimes and Degrees—Purpose of Evidence—Erroneous Instruction—Lack of Prejudice.—In a prosecution for murder, in which the defendant was convicted of manslaughter, where the record in its entirety discloses a set of facts from which the jury might well have found the defendant guilty of murder, and the jury was correctly instructed as to the crimes and degrees of crime included in such charge, as well as to the law of self-defense and insanity, defenses interposed by the defendant, the defendant was not prejudiced by an erroneous instruction to the effect that certain evidence was not received to reduce the crime from murder to manslaughter, but was received solely in connection with the defense of insanity and to assist the jury in determining between the death penalty and imprisonment for life, if the defendant was found guilty of murder in the first degree.

---

(1) 40 Cyc., p. 2492.    (2) 30 C. J., p. 199, sec. 427.    (3) 30 C. J., p. 237, sec. 474; p. 241, sec, 477.    (4) 17 C. J., p. 335, sec. 3680. (5) 16 C. J., p. 940, sec. 2309.    (6) 16 C. J., p. 926, sec. 2285½ (1926 Anno.).    (7) 17 C. J., p. 344, sec. 3695.    (8) 17 C. J., p. 274, sec. 3602.    (9) 30 C. J., p. 53, sec. 228.    (10) 30 C. J., p. 449, sec. 714.    (11) 30 C. J., p. 360, sec. 613.    (12) 30 C. J., p. 446, sec. 712.

10. Irresistible impulse as excuse for crime, notes, 18 L. R. A. 224; 27 L. R. A. (N. S.) 461; L. R. A. 1918D, 794. See, also, 13 Cal. Jur. 619, 667; 13 R. C. L. 710.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.  Sidney N. Reeve, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Ford, Bodkin, Watt & Herlihy for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

WASTE, J.—Upon information charging him with the crime of murder, the defendant was convicted of manslaughter.  He appeals from the judgment and from an order · denying his motion for a new trial.  There is no question of the fact that the appellant killed one R. T. Mc-Adams, as alleged in the information.  On the day of the killing, at about 9 o'clock in the evening; the wife of the appellant, who appears to have been estranged from her husband and to have been very intimate with McAdams, went with McAdams to an amusement section in the city of Long Beach known as the "Pike."  There McAdams was killed, the appellant firing two shots from a revolver into his body.  McAdams fell to the sidewalk and the defendant fired three more bullets into the inert body.  There is evidence in the record from which it may be inferred that one of the first shots was fatal.  The defenses presented at the trial were, first, self-defense, and, second, insanity of the defendant at the time he committed the act.

[1]  On this appeal it is urged that the court erred in sustaining an objection of the district attorney to questions asked of a witness, Martin, who was an eye-witness from the beginning of the affray until the defendant was arrested, and who, while on the stand, minutely described what took place.  On cross-examination the defendant sought to elicit from the witness testimony concerning the action of Mrs. McGann immediately after the shooting, and relating to the position of the decedent's body after the defendant had gone some distance away, and then returned to the scene after the fatal shots were fired.  Although in his briefs on appeal the appellant asserts that he attempted to cross-examine the witness Martin on these matters for the purpose of testing the strength of his recollection, the

record discloses that this evidence was sought to be intro-
duced as "part of the *res gestae*, for one purpose," and also
to show "what it was that the defendant was looking at."
The trial court properly sustained objection to this testi-
mony. The record discloses that the witness Martin was
cross-examined extensively concerning all the matters ob-
served by him during the altercation; and Mrs. McGann,
while on the stand, narrated fully the details of what she
did immediately after McAdams fell to the ground. The
additional evidence sought to be elicited from Martin, and
to which the objection was sustained, in no way related to
the *res gestae*.

[2] It is next urged that the court erred in refusing to
permit the wife of the defendant, who was a witness for
the defense, to testify as to what was said by the decedent
McAdams to her immediately before the shooting, when the
wife and McAdams first saw McGann, such conversation
not having been heard by the defendant. After locating
the place from which the witness and the deceased saw the
defendant, counsel for the defense asked: "At that time did
you have a conversation with Mr. McAdams, the deceased,
about Mr. McGann? A. I did. Q. What was said between
you at that time? Mr. Van Cott (Deputy District Attorney):
That is objected to as irrelevant and immaterial on any
theory. Mr. Ford: Showing a state of mind and a declara-
tion of intention, your Honor, not as evidence of the nar-
rative, but merely as a declaration. Mr. Van Cott: I ob-
ject to that as irrelevant and immaterial. The Court: I will
sustain the objection." The examination then proceeded
without further statement or offer on behalf of the defend-
ant as to what he intended to show, and the court was not
apprised of the purpose for which the evidence was sought,
other than as stated by Mr. Ford. The witness then de-
scribed the shooting. The substance of her testimony was
that although she did not "want to go that way," after
the presence of the defendant was noted, McAdams and she
walked toward her husband; that when they reached the
defendant the decedent bumped into him with his left
shoulder; that the defendant then took hold of the decedent's
arm and said to him: "Do you know this woman you are
walking with is my wife and you have broken up my home?"
to which the decedent replied: "She was yours but she is

mine now.  I am going to keep her . . . what the hell are
you going to do about it? . . . Take your hand off my arm.''
According to the witness, the decedent then struck the de-
fendant in the face.  There was a further altercation, and
the shooting of the decedent by the defendant occurred.

It is the contention of the defendant that in view of his
plea of self-defense it was important to determine whether
or not the deceased was the aggressor, and for that reason
he should have been permitted to show that the decedent
uttered threats concerning the defendant immediately prior
to the affray, which, although uncommunicated to the
defendant, had a material bearing upon what followed.
[3]  This court has said that in case of a deadly encounter,
where one party is killed and the survivor claims that the
killing was done in self-defense, the question as to who
was the aggressor is an issue of vital importance for the
consideration of the jury.  Under these circumstances, all
the acts and conduct of the deceased, either in the nature
of overt acts of hostility or threats, communicated or un-
communicated, are proper evidence to be considered by the
jury as shedding light, to some extent, upon the issue as to
whether the deceased or the defendant was the real aggressor
in the affray.  (*People* v. *Thomson,* 92 Cal. 506, 511 [28
Pac. 589].)  It is now urged by the defendant, on the
strength of this and other authorities, that if Mrs. McGann
had been permitted to testify as to what the decedent Mc-
Adams said to her immediately prior to the affray it would
have been shown that the decedent deliberately approached
McGann ''with the purpose of starting trouble and injur-
ing the defendant.''  He made no such explanation to the
trial court at the time, and does not now enlighten us as
to what the witness would have testified to.  Aside from
the scant declaration of counsel at the time the objection
was interposed, the only reference or intimation from which
the trial court might be apprised of the object of the defend-
ant in asking the question is found in the opening statement
of counsel for the defense when he said, without referring
to any witness or witnesses, ''we offer to show his [the de-
cedent's] state of mind—sentiment—I have forgotten the
exact language the witnesses will testify to in that, but the
effect was, that he would show the defendant he was not
afraid of him.''

[4] We are, therefore, unable to say whether or not the answers of the witness would have had the effect now suggested by appellant. There is nothing in the record from which we may judge the fact. Counsel did not attempt to further explain the purpose of the question, nor offer to show wherein the testimony sought to be elicited would in any way relate to the issue of the defendant's guilt or innocence. If, as appellant now contends, the real purpose of the question was to show who was the aggressor in the affray, he should have stated such purpose more clearly to the trial court in order that it might intelligently rule upon an objection to a question which did not, of itself, show its relevancy or materiality. This court cannot, in the present state of the record, determine whether or not the substantial rights of the defendant were prejudiced by the ruling. (*People* v. *Ferdinand, ante,* p. 555 [229 Pac. 341]; *People* v. *Brent,* 11 Cal. App. 674, 676 [106 Pac. 110]; *People* v. *Reyes, ante,* p. 650 [229 Pac. 947].) But, assuming that the trial court was apprised of the nature of the evidence sought to be introduced, it does not appear that the defendant was injured. Mrs. McGann was permitted to testify to the fact that she was compelled to go with the deceased against her will to where the defendant was standing. She testified fully as to other facts strongly tending to indicate that the decedent was the aggressor. There is also evidence that other parties had told the defendant that the decedent was a "bully," and that he was a bad man. The defendant on the stand gave his version of the affray. In addition to the facts related by his wife, he testified that the decedent, after he approached, made a motion as if to draw a gun from his hip-pocket, whereupon he (the defendant) "shot him"; that he had been told that the decedent was "quarrelsome, bad and dangerous, and to look out for him," and that he believed that he was in danger at the time the shots were fired. In view of the complete testimony in the record, we are unable to conceive how any prejudice was done to the defendant by the action of the trial court in sustaining the objection to the question asked Mrs. McGann.

[5] In concluding one of its instructions to the jury, the court said: "It has been urged on behalf of the defendant that, it being impossible to assign any reason for the

perpetration of the offense, he must have been acting under what is called a powerful and irresistible influence or homicidal tendency. But in that connection I charge you that the circumstances of an act being apparently motiveless is not a ground from which you can safely infer the existence of such an influence. Motives exist unknown and innumerable which might prompt the act. A morbid and restless (but irresistible) thirst for blood would itself be a motive urging such a deed for its own relief.'' It is now urged that the court's statement that ''it has been urged on behalf of the defendant that, it being impossible to assign any reason for the perpetration of the offense,'' was a comment upon the evidence which practically amounted to the court saying that the reason assigned by the defendant for the firing of the shots which caused death was no reason at all, and should not be considered by the jury, and that the statement was prejudicial when coupled with the closing statement that ''a morbid and restless (but irresistible) thirst for blood would itself be a motive urging such a deed for its own relief.''

The statement by the court of what had been ''urged on behalf of the defendant'' indicates that matters of the nature referred to in the instruction had been injected into the trial, and it was held in *People* v. *McCarthy,* 115 Cal. 255, at page 264 [46 Pac. 1073, 1076], in commenting upon a similar instruction, that ''whatever may be correctly stated by counsel in argument to the jury, as a legal guide to facilitate their deliberations, must necessarily be held proper matter for instruction by the judge, since the latter is the source from which the jury are to receive their guidance in the law.'' But the point here urged was not raised in that case. It is now argued that the instruction amounted to a charge to the jury with respect to matters of fact. The contention must be upheld.

[6] The question of a motive in a criminal prosecution is essentially a question of fact. (*People* v. *Tom Woo,* 181 Cal. 315, 328 [184 Pac. 389]; *People* v. *Besold,* 154 Cal. 363, 369 [97 Pac. 871].) An instruction, in effect not unlike the one here criticised, and in which the trial court discussed the importance of a motive in a criminal case, was held to be ''an argument against the defendant on the facts,'' and a violation of the constitutional inhibition de-

claring that judges shall not charge juries with respect to matters of fact. (*People* v. *Hoff*, 129 Cal. 497, 508 [58 Pac. 156, 62 Pac. 111].) Where a defendant, admitting the homicide, contends that it was in necessary self-defense, and the evidence is conflicting as to who was the aggressor, and. as to whether appearances at the time the fatal shot was fired would justify a reasonable man in believing himself in danger, an instruction that unknown motives exist, although not proven, and that a "thirst for blood" would be a motive urging the deed, is a charge on the ultimate question upon which the jury is to pass. (*People* v. *Enwright*, 134 Cal. 527, 530 [66 Pac. 726].) Here, the instruction practically informed the jury that it would be warranted in finding a motive for the conduct of the defendant without any proof whatever. (*People* v. *Argentos*, 156 Cal. 720, 730 [106 Pac. 65].) The giving of the instruction not being justified in law, or by the facts, it must be determined whether or not the trial court's action resulted in material prejudice to the cause of the defendant.

[7] No more importance is to be attached to an error of the trial court in violating the provision of the constitution forbidding instructions with respect to matters of fact than to any other, if no injury results from it. (*People* v. *Ybarra*, 17 Cal. 166, 171.) Such a declaration was made by this court at a time when injury to a defendant in a criminal cause would be presumed unless the contrary clearly appeared. (*People* v. *Eppinger*, 109 Cal. 294, 297 [41 Pac. 1037].) [8] Prejudice is no longer presumed, but substantial injury, as well as error, must be made affirmatively to appear before a judgment of conviction will be set aside. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 554 [147 Pac. 238]; *People* v. *Alba*, 52 Cal. App. 603, 608 [199 Pac. 894].) The defendant fired five shots into the body of the decedent. As to the first two, he pleaded necessary self-defense, thereby advancing a motive in justification of his deed. Such contention was prominently before the jury at all stages of the trial. It was fully and correctly instructed on the law of self-defense. In view of the situation thus presented, it seems incredible that the court could have intended, or that the jury considered, that the instruction should have any reference to the defense of self-preservation interposed by the defendant. So far as it could have had any applica-

tion to the facts of the case, the instruction must be deemed to have had relation to the contention of the defendant that, after the first two shots were fired, his mind became blank and gave way, and that he did not know what had been done, and had no memory of any other shots being fired. [9] If he fired several shots into the body of McAdams after all necessity for the use of a deadly weapon in defending himself against attack had ceased, such action would not be legally justified on the theory of self-defense. (*People* v. *Brown,* 62 Cal. App. 96 [216 Pac. 411].) [10] The defendant has never contended that he was insane when he fired the first shots. Consequently it was necessary to demonstrate to the jury that the last three shots were fired without malice and through some irresistible influence or motive unknown to him. It was for this purpose, as the record shows, that the defendant interposed the plea of insanity or mental weakness, in support of which he introduced many witnesses to testify in substantiation of his contention that he and members of his family had suffered mental disturbances of various kinds. It thus becomes apparent that the giving of the instruction did the defendant no harm. The effect of the portion of the charge objected to was to argue against, and to deprive the defendant of the plea that he was not actuated by any malice at the time he fired the last three shots. If the jury had accepted and followed the court's instruction, it must of necessity have found the defendant guilty of murder as charged in the information. It did not do so, but found him guilty of manslaughter, and thereby eliminated any question of malice in the perpetration of the homicide. Therefore, we cannot say that any substantial injury was done to the defendant by reason of the erroneous instruction.

[11] The defendant introduced evidence to show that he was "controlled by some temporary aberration of the mind" when he shot McAdams. It was, therefore, not error on the part of the trial court to instruct the jury that the law does not recognize the plea of irresistible impulse, but that responsibility depends upon the question whether or not accused was conscious of and knew the nature of the act committed at the time of its commission, and whether it was wrong. (*People* v. *Hoin,* 62 Cal. 120, 123 [45 Am. Rep. 651].)

[12]   The defendant testified that some two months before the shooting of McAdams he moved himself and his belongings from his home, for the reason that his wife told him that he should leave, that she did not care for him any more, and that if he did not leave she would have him forcibly put out of the house.   There was also evidence that after he left his home he and others saw Mrs. McGann many times in the company of the deceased.   The trial court instructed the jury that this evidence was not received as having any tendency in law to reduce the crime of the defendant from murder to manslaughter, and must not be considered for any such purpose; but that it was received solely in connection with the defense of insanity set up by the defendant, and to assist the jury in determining between the death penalty and imprisonment for life, if it should find the defendant guilty of murder in the first degree as that crime was defined elsewhere in the charge.

The instruction should not have been given.   An examination of the record shows quite clearly that the evidence just cited, part of which is referred to in the instruction, was introduced to show the "state of mind," generally, of the defendant, and the "effect on his state of mind," brought on by the sight of his wife in company of the decedent.   There does not appear to have been any such limitation of the evidence, when offered and received, as that placed upon it by the trial court.   Neither is there to be found any justification for the assertion that the evidence was received solely to assist the jury in determining between the death penalty and imprisonment for life in the event it found the defendant guilty of murder in the first degree.   While this court is at a loss to understand why the instruction was given, it is clear that no substantial prejudice resulted to the case of the defendant because it was given.   When read in its entirety, the record discloses a set of facts from which the jury might well have found that the defendant was guilty of murder, as charged in the information.   It was correctly instructed as to the crimes and degrees of crime included in such a charge.   It was fully informed as to the law of self-defense and insanity, the defenses interposed by the defendant.   By its verdict it rejected these pleas, but did reduce the crime committed by him from murder to manslaughter.   Therefore, it cannot be

said that the giving of the instruction last complained of did any injury to the defendant's cause.

The order and the judgment appealed from are and each is affirmed.

Lawlor, J., Lennon, J., Shenk, J., Richards, J., Seawell, J., and Myers, C. J., concurred.

Rehearing denied.

All the Justices concurred.