[Crim. No. 3404. First Dist., Div. Two. May 12, 1958.]

THE PEOPLE, Respondent, v. ROSE LUCAS, Appellant.

Nathan Cohn and Lawrence Shostak for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Jack Berman, Deputy District Attorney, for Respondent.

DRAPER, J.—Defendant was indicted for the murder of her husband. A jury found her guilty of manslaughter, and she appeals from judgment entered upon that verdict and from order denying new trial.

Defendant and decedent, a highway patrolman, had been married 23 years. Defendant testified that the marriage had been an unhappy one, that in the last five years decedent had been drinking heavily, and had choked her at least two or three times a month. They had a quarrel the evening of December 3, 1956, and she called the police. The next night, she stayed with a neighbor until midnight. When she returned home, her husband was asleep. She saw a loaded revolver on the dresser in his room, removed the bullets from the gun and placed it in a drawer. The next evening, December 5, defendant and decedent had another argument. Mrs. Lucas testified that he threatened to kill her. She called the police, who arrived, talked with the two parties, and left. Mr. Lucas was not armed. Her testimony is that she then went to the kitchen; decedent again told her to get out and threatened to kill her; she let the dog out and started to prepare dinner; decedent, who remained in the living room, continued to call threats to her; she went to the bedroom, got the revolver from the drawer, loaded it with the five shells she had removed the previous evening, and returned to the living room carrying the gun. She then testified:

". . . he was sitting down in the living room and I walked into the little hall near where he was sitting and I said to him, I says, 'Joe, I can't go on like this, we can't go on like this any longer. I have to talk to you, and,' I says, 'I don't want you to kill me' . . . And with that he went to get up and I just remembered just moving back, stepping back and then he came with his arms out at me and I just thought he was going to kill me . . . and then the gun just seemed to go off."

On appeal, it is conceded that defendant fired the gun. All five shells were fired, and four bullets struck decedent. He died shortly after.

As is apparent from the testimony quoted above, it was defendant's contention that she shot in self-defense when

decedent rose from his chair and advanced upon her, with arms reaching toward her. There was oral testimony of three statements made by defendant to police shortly after the shooting, in which she said that decedent was in the chair when the first shot was fired, and that he then started to get up from the chair and she fired the remaining four shots at him.

At the time of the argument immediately preceding the shooting, the two grown sons of defendant and decedent were downstairs in the family home with friends. Mrs. Lucas admitted that she was not so fearful of attack by her husband when her sons were home. She testified that she did not know the boys were present, although she also testified that she planned to prepare dinner for them, and one son testified that he had quieted a slightly earlier argument between his parents.

Defendant's principal contention is that the assistant district attorney who prosecuted this case was guilty of misconduct which prejudiced her case. More than 30 pages of the opening brief are required to detail the asserted instances of misconduct. It would serve no purpose to list them all here.

██ It is argued that the prosecutor, in his opening statement, improperly told the jury that he expected to prove five matters which he did not prove by the evidence introduced. Upon three of these issues, there was evidence from which the jury could infer the facts as claimed by the prosecution. The fact that defendant is unwilling to draw such inferences does not show misconduct. One statement, that defendant on December 3 told police officers that she "would file a civil action" is but collateral. ██ The opening statement did say that "the pictures will show" that the final shot was fired into decedent's head while he lay on the floor. In fact this was not established, but was disproved by evidence produced by defendant. However, there is no showing that the erroneous statement by the prosecutor was made in bad faith. In the absence of a positive showing of a deliberate attempt to misstate the case, such a remark cannot constitute prejudicial misconduct. (*People* v. *Alexander,* 41 Cal.App.2d 275, 282 [106 P.2d 450, 916].) ██ Appellate courts recognize that such an overstatement reacts against the party making it, and thus often is not prejudicial to the opposing party. (*People* v. *Berryman,* 6 Cal.2d 331, 336 [57 P.2d 136], and cases there cited.) In the case at bar, defense counsel made effective use of the overstatement in his argument, quoting

the opening statement and pointing out to the jury the respects in which the proof fell short of sustaining its assertions.

During the prosecutor's argument, defendant cried out that he was lying. A recess was taken, and, when argument was resumed, the prosecutor began to comment upon this incident. The court, of its own motion, stopped this argument and instructed the jury to disregard it. Later, the prosecutor said that there was "no evidence of mourning" on the part of defendant. No objection was made. Defendant urges these incidents as prejudicial misconduct. Defendant relies upon *People* v. *Peete,* 54 Cal.App. 333, 370 [202 P. 51]. The facts of that case differ from those of the case at bar. Here defendant took the witness stand, where Mrs. Peete did not. Here defendant interrupted the argument by comment audible to the jury. In any event, the decision in *People* v. *Peete,* although it termed the prosecutor's conduct "reprehensible," held there was no reversible error because there had been no objection, and the error was one which could have been cured by admonition. Here the admonition was given, in the one instance, by the court upon its own motion. In the other instance, no objection was made. Thus, on the authority of the very case cited by defendant, the error must be held not prejudicial.

The substantial majority of the remarks assigned as misconduct were directed against defense counsel, rather than defendant. Full review of the extensive transcript reveals that both counsel frequently reverted to the ancient form of trial by champion, making the issue a personal quarrel between them. The trial court twice cited both counsel for contempt. It is true that the assistant district attorney was more often the aggressor in these flurries, and his conduct was often overzealous or in poor taste. The trial judge, however, was constantly alert to these deviations from the proper course. His firmness quickly ended the diversions of counsel. He was prompt and decisive in sustaining defense objections and in admonishing the jury to disregard the statements of counsel for the People whenever objection was made, and in some cases where it was not. In his instructions to the jury, he fully advised them to look solely to the evidence and not to the statements of counsel in determining the facts.

In general, criticisms of defense counsel are not grounds for reversal of judgment, in the absence of a showing of prejudice to defendant. (*People* v. *Rickman,* 67 Cal.App.

2d .711, 714 [155 P.2d 374].) The decision in *People* v. *Podwys,* 6 Cal.App.2d 71 [44 P.2d 377], is not applicable. There the opinion does make reference to criticisms of the public defender by the district attorney. However, the prosecutor also argued that he had not sought and would not seek to convict an innocent man. Also, the closeness of that case was evidenced by the fact that in the previous trial the jury had disagreed after a full day's deliberation.

█ In a criminal case, the prosecution has a heavy burden of proof. The likely tendency of such diversionary tactics as attacks upon defense counsel, at least where he fends off the attacks as adroitly as in our case, is to distract the jury's attention from the proof by which the prosecution must convince the jury beyond a reasonable doubt, thus prejudicing the prosecution rather than the defense.

█ In determining whether misconduct has prejudiced the defendant, we may look to the strength of the proof of guilt. (*People* v. *Byrnes,* 84 Cal.App.2d 64, 70 [190 P.2d 286].) The only defense is that the killing was justifiable because committed in self-defense. █ But threats alone, unaccompanied by some act which induces in defendant a reasonable belief that bodily injury is about to be inflicted, do not justify a homicide. (*People* v. *Lynch,* 101 Cal. 229 [35 P. 860].) The danger which justifies homicide must be imminent (*People* v. *Turner,* 86 Cal.App.2d 791 [195 P.2d 809]) and a mere fear that danger will become imminent is not enough (*People* v. *Taylor,* 4 Cal.App. 31, 37 [87 P. 215]).

█ Thus defendant's admissions to the police that she first shot when the unarmed decedent was seated militate strongly against her defense. Also, the evidence shows that the course of one bullet through decedent's body indicates that it was fired while he was falling, and it is undisputed that four shots struck decedent. There is also evidence that one or more shots struck decedent from the rear. Since measures of self-defense cannot continue after the assailant is disabled, these circumstances weigh strongly against the contention that self-defense justified the killing. (*People* v. *McGann,* 194 Cal. 688, 697 [230 P. 169]; *People* v. *McCurdy,* 140 Cal.App. 499, 503 [35 P.2d 569].)

Full review of the record convinces us that defendant suffered no prejudice from the misconduct of the prosecutor. The jury found her guilty of the lesser included offense of manslaughter, upon evidence which would have warranted conviction of a greater offense. On the whole record, it is

difficult to believe that defendant could have been acquitted. The conduct of the prosecution is by no means to be condoned. Had it been successful, reversal would be required. However, we agree with defense counsel's statement to the jury that the prosecutor's conduct "helped my case immeasurably." Under all the circumstances, the misconduct was not prejudicial to defendant.

 Defendant also complains that the court instructed the jury that only a voluntary confession can be considered by the jury. The contention is that this amounted to instructing that the statements given by defendant to police were confessions, whereas defendant contends they were but admissions. However, the court fully and correctly instructed the jury as to the distinction between confession and admission, and left to the jury the questions whether a confession had been made, and if so whether it was true. There was no error. (*People* v. *Gardner,* 147 Cal.App.2d 530, 538 [305 P.2d 614].)

Judgment and order denying new trial affirmed.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied June 11, 1958, and appellant's petition for a hearing by the Supreme Court was denied July 9, 1958.