[No. F059255. Fifth Dist. Oct. 14, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
LUCIANO GALINDO LOPEZ et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, the first paragraph of part III of the Discussion, part IIIB., and the Disposition are certified for publication.

**COUNSEL**

A. M. Weisman, under appointment by the Court of Appeal, for Defendant and Appellant Luciano Galindo Lopez.

Kim Malcheski, under appointment by the Court of Appeal, for Defendant and Appellant Cortney DeJohn Flemming.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**POOCHIGIAN, J.—**

## INTRODUCTION

Luciano Galindo Lopez and Cortney DeJohn Flemming (Lopez and Flemming; collectively, defendants) stand convicted, following a jury trial, of the second degree murder of Fidel Jimenez (Pen. Code,[1] § 187, subd. (a);

---

[1] All statutory references are to the Penal Code unless otherwise stated.

count 1) and the attempted murder of Adam Mirelez (§§ 187, subd. (a), 664; count 2). The jury further found that Flemming personally and intentionally discharged a firearm, proximately causing death (§ 12022.53, subd. (d)) with respect to count 1, and that he personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) with respect to count 2. As to Lopez, the jury found with respect to both counts that a principal was armed with a firearm (§ 12022, subd. (a)(1)).

Flemming's motion for a new trial, in which Lopez joined, was denied. Lopez was sentenced to prison for a total of 15 years to life plus eight years and ordered to pay various fees and fines, while Flemming was sentenced to prison for a total term of 40 years to life plus 27 years and was also ordered to pay various fees and fines. Each filed a timely notice of appeal and now raises various claims of error. For the reasons that follow, we will order the correction of a clerical error and affirm the judgments in full.

We publish to address defendants' claims that the standard CALCRIM instructions do not correctly set out the imminence requirement for imperfect self-defense, and that the error was exacerbated by the special instruction given at the prosecutor's request.

## FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

### I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

#### JURY INSTRUCTIONS

Defendants raise several claims of error with respect to jury instructions the trial court did, or did not, give. We address each in turn.

A.  *Attempted Murder**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1297.

## B. *Imperfect Self-defense*

### 1. *Background*

The evidence showed that Jimenez and Mirelez were inside Jimenez's pickup truck in the Liquor King parking lot at the time of events. The prosecution's theory was that Lopez tried to start an argument with Jimenez (the driver) because of Lopez's apparent perception that Jimenez's truck came too close to him, then did start an argument with Mirelez (the passenger). When Lopez yelled to Flemming to pull out a gun Lopez had previously given him, Flemming pulled the weapon and fired two shots at the truck, one of which fatally wounded Jimenez.

No Club (a vehicle security device) or similar item was found at the scene of the shooting. Martin Alvarez told Detective Tacadena, however, that Mirelez swung at someone outside Jimenez's vehicle with an object that appeared red in color. Claudia Seamster told Detective Byrd that Flemming said they were arguing and the person in the truck reached for something, and Seamster "guess[ed]" Flemming got scared. She believed it was Flemming who said he thought the person was going to get a weapon. Crystal Torres testified that she saw somebody swing at the passenger in the truck; the passenger flinched back, pulled out a red Club, and swung it.

The prosecutor opposed the giving of any form of self-defense instructions, arguing that there was insufficient evidence to warrant them and also that Lopez was the initial aggressor. Lopez took the opposite position, pointing to the testimony that Mirelez was holding, or at least appeared to be reaching for, something. Flemming argued that a defense-of-others instruction was warranted on the theory that Jimenez's truck was the deadly force placing Lopez in danger.

The court tentatively ruled that, because the evidence showed Lopez to be the aggressor, he was not entitled to self-defense instructions. The court found there was insufficient evidence to allow the initial aggressor the right to respond with deadly force. The court found insufficient evidence to permit an inference of reasonable or honest belief in the need for self-defense, or the existence of an imminent danger of great bodily injury.

The court later entertained further argument—which focused on Seamster's statements to Byrd. The court stated that if it did give any of the instructions,

it would not have a problem with the prosecutor's requested special instruction on the definition of imminent danger, which, it observed, had been upheld as a correct statement of law.[33]

The court subsequently ruled it would give voluntary manslaughter instructions, as to both counts, on the theory of imperfect self-defense. The court also determined it would give the special instruction on imminent danger.

With respect to the murder charge, the trial court ultimately instructed the jury pursuant to CALCRIM No. 571. In pertinent part, it told jurors:

"Now, I'm going to introduce you to the concept of voluntary manslaughter, a lesser included charge to the crime of murder.

"A killing that would otherwise be murder is reduced to voluntary manslaughter if a defendant killed a person because he acted in imperfect self-defense or imperfect defense of others.

"A defendant whose act of killing in complete self-defense or defense of another acts lawfully.

"All right. So complete self-defense or self-defense or defense of another acts lawfully.

"Difference between complete self-defense or imperfect self-defense or defense of another is the defendant's belief or use to—a defendant acts in imperfect self-defense or defense of another if: One, a defendant believed he was in danger of being killed or suffering great bodily injury. Two, the defendant actually believed the immediate use of deadly force was necessary to offend [*sic*] against that danger.

"Okay. I'm going to start over. . . .

"This should read: That the defendant actually believed that he or another person was in imm[i]nent danger of being killed or suffering great bodily injury.

"All right. So when you get the final instructions that will be edited to correctly reflect what the law states.

---

[33] The requested instruction read: " 'Imminent danger' as used in these instructions, means that the danger must have existed or appeared to the defendant to have existed at the very time the fatal shot was fired. In other words, the danger must appear to the defendant as immediate and present and not prospective or even in the near future. An imminent danger is one that, from appearances, must be instantly dealt with."

"Two, the defendant actually believed that the immediate use of deadly force was necessary to defend against that danger, but at least one of those beliefs was unreasonable. Belief in future harm is not sufficient no matter how great or how likely the harm is believed to be. In evaluating the defendant's beliefs consider all the circumstances as they were known and appeared to the defendant."

With respect to the attempted murder charge, the court instructed pursuant to CALCRIM No. 604. In pertinent part, it stated:

"An attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendants killed a person because they acted in imperfect self-defense or imperfect defense of another.

"A defendant whose acts [*sic*] of killing is in complete self-defense or defense of another acts lawfully.

"The difference between complete defense [*sic*] and imperfect defense [*sic*] depends on whether or not the defendant's belief and [*sic*] the need to use deadly force is reasonable. A defendant acted in imperfect self-defense or defense of another if: One, a defendant took at least one step towards killing a person. The defendant intended to kill when he acted. The defendant believed that he or another was in imm[i]nent danger of being killed or suffering great bodily injury. And four, the defendant believed that the immediate—the defendant believed that the immediate use of deadly force was necessary to defend against that danger. Five, the defendant's beliefs were unreasonable. [¶] . . . [¶]

"Belief in future harm, as mentioned earlier, is not sufficient no matter how great or likely the harm is believed to be. The defendant must have actually believed that there was a imm[i]nent danger of violence to himself or someone else."

Just before instructing on an initial aggressor's right of self-defense (in which the court again told jurors, "belief in future harm is not sufficient"), the court told the jury: "Now I'm going to give you some instructions that apply on imperfect self-defense of another and murder and attempted murder. Imm[i]nent danger used in these instructions may apply to defendant or defendants and must have existed at the very time the fatal shot was fired. In other words, the danger must appear to the defendant as immediate and present and not prospective or even in the near future. And [*sic*] imm[i]nent danger is one from appearances that must be instantly dealt with."

### 2. *Analysis*

Lopez now contends CALCRIM Nos. 505 and 571 misstate the concept of imminent peril, especially when considered in conjunction with the prosecution's special instruction. Flemming joins in the argument.[34] Defendants say that CALJIC Nos. 5.12 (justifiable homicide in self-defense) and 5.17 (actual but unreasonable belief in necessity to defend—manslaughter) correctly define an imminent peril or danger as one that "must be apparent, present, immediate and instantly dealt with, or must so appear at the time to the slayer as a reasonable person" (CALJIC No. 5.12) and "one that is apparent, present, immediate and must be instantly dealt with, or must so appear at the time to the slayer" (CALJIC No. 5.17). In contrast, the CALCRIM instructions given in the present case, "aggravated by the misleading language of the prosecution's special instruction," tell jurors that a defendant may resort to deadly force against an imminent threat of death or great bodily harm, but then contradictorily say a defendant may not act in self-defense against a threat of future harm, no matter how great or likely that harm is believed to be. Because an imminent peril is necessarily one that lies in the immediate future, the argument runs, the instructions erroneously eliminated the imperfect self-defense theory.[35]

---

[34] The Attorney General says that because the court did not give CALCRIM No. 505 (Justifiable Homicide: Self-Defense or Defense of Another), defendants can be heard to object, if at all, only to CALCRIM No. 571. Although the trial court did not instruct on the defense of self-defense, it did give a portion of CALCRIM No. 505 in conjunction with its instructions on an initial aggressor's right to imperfect self-defense. Although we focus on CALCRIM No. 571, our analysis applies equally to CALCRIM No. 505. In addition, we assume defendants' claim encompasses CALCRIM No. 604, the instruction on attempted voluntary manslaughter based on imperfect self-defense, which was given with respect to count 2.

[35] We reject the Attorney General's claim of invited error or forfeiture by failure to object. There is no forfeiture of an instructional issue where the substantial rights of the defendant have been affected. (§ 1259; *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574 [64 Cal.Rptr.3d 116].) Once the trial court determined there was enough evidence to warrant the giving of instructions on voluntary manslaughter and attempted voluntary manslaughter based on imperfect self-defense, it was required to instruct on those offenses even without a request, as they constituted lesser included offenses of the charged crimes. (*People v. Murtishaw* (2011) 51 Cal.4th 574, 594 [121 Cal.Rptr.3d 586, 247 P.3d 941]; *People v. Cruz* (2008) 44 Cal.4th 636, 664 [80 Cal.Rptr.3d 126, 187 P.3d 970]; *People v. Barton* (1995) 12 Cal.4th 186, 200–201 [47 Cal.Rptr.2d 569, 906 P.2d 531]; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 833 [74 Cal.Rptr.3d 416].) If defendants' claim is meritorious, the instructions were not correct in law and violated their substantial rights by misdirecting the jury on a lesser included offense, thus requiring no objection for appellate review. (See *People v. Hillhouse* (2002) 27 Cal.4th 469, 503 [117 Cal.Rptr.2d 45, 40 P.3d 754].) With respect to the assertion of invited error, defendants did not request, or even expressly agree to, the prosecutor's special instruction; they simply did not object to it. Under the circumstances, we find no invited error. (Cf. *People v. Davis* (2005) 36 Cal.4th 510, 539 [31 Cal.Rptr.3d 96, 115 P.3d 417] [defendant barred from challenging special instruction to which he expressly agreed at trial].)

■ A killing committed in so-called perfect self-defense is neither murder nor manslaughter, but instead is justifiable homicide. (§ 197; *People v. Randle* (2005) 35 Cal.4th 987, 994 [28 Cal.Rptr.3d 725, 111 P.3d 987], overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201 [91 Cal.Rptr.3d 106, 203 P.3d 425].)[36] "For perfect self-defense, one must actually *and* reasonably believe in the necessity of defending oneself from imminent danger of death or great bodily injury. [Citation.]" (*People v. Randle, supra,* at p. 994.) The danger must be imminent; mere fear that it will become imminent is not enough. (*People v. Lucas* (1958) 160 Cal.App.2d 305, 310 [324 P.2d 933].)

■ Manslaughter is an unlawful killing without malice. (§ 192; *People v. Cruz, supra,* 44 Cal.4th at p. 664.) The element of malice is negated, and a killing reduced from murder to voluntary manslaughter, when a defendant kills in the actual but unreasonable belief that he or she is in imminent danger of death or great bodily injury. (*People v. Cruz, supra,* at p. 664; *People v. Randle, supra,* 35 Cal.4th at p. 994.)

"In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights. In making this determination we consider the specific language under challenge and, if necessary, the instructions as a whole. [Citation.]" (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585 [102 Cal.Rptr.2d 254]; accord, *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 112 S.Ct. 475]; *People v. Jablonski* (2006) 37 Cal.4th 774, 831 [38 Cal.Rptr.3d 98, 126 P.3d 938]; see also *People v. Rogers* (2006) 39 Cal.4th 826, 873 [48 Cal.Rptr.3d 1, 141 P.3d 135] [applying reasonable likelihood standard to both ambiguous and conflicting instructions].) " 'Finally, we determine whether the instruction, so understood, states the applicable law correctly.' [Citation.]" (*People v. Kelly* (1992) 1 Cal.4th 495, 525–526 [3 Cal.Rptr.2d 677, 822 P.2d 385], fn. omitted.) We independently assess whether instructions correctly state the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].)

■ The relevant law is settled. For either perfect or imperfect self-defense, the defendant's fear must be of imminent harm. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 [56 Cal.Rptr.2d 142, 921 P.2d 1].) "Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice. The defendant's fear must be of

[36] Our discussion of the applicable legal principles applies equally to completed and attempted homicides.

*imminent* danger to life or great bodily injury." (*In re Christian S.* (1994) 7 Cal.4th 768, 783 [30 Cal.Rptr.2d 33, 872 P.2d 574].)

■ We find no reasonable likelihood the jury found the instructions self-contradictory or understood them, as defendants assert, to foreclose application of the theory of imperfect self-defense. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1212 [17 Cal.Rptr.3d 532, 95 P.3d 811].) "Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might." (*Boyde v. California* (1990) 494 U.S. 370, 380–381 [108 L.Ed.2d 316, 110 S.Ct. 1190].) There is no reasonable likelihood jurors would fail to understand the difference between imminent danger and future harm, one being immediate and the other not. Accordingly, we conclude CALCRIM Nos. 505, 571, and 604 correctly stated the law.

In *People v. Aris* (1989) 215 Cal.App.3d 1178, 1187 [264 Cal.Rptr. 167] (*Aris*), disapproved on another ground in *People v. Humphrey, supra,* 13 Cal.4th at page 1089, the appellate court approved of the trial court's defining "imminent peril" as meaning that " 'the peril must appear to the defendant as immediate and present and not prospective or even in the near future. An imminent peril is one that, from appearances, must be instantly dealt with.' " This definition has been quoted with approval by the California Supreme Court (see, e.g., *In re Christian S., supra,* 7 Cal.4th at p. 783), and was incorporated into CALJIC Nos. 5.12 and 5.17, the counterparts of CALCRIM Nos. 505 and 571.

The essence of this legal principle is contained in CALCRIM Nos. 505, 571, and 604 by virtue of their requirement that the defendant must have believed "the *immediate* use of deadly force was necessary to defend against" the danger. (Italics added.) Nonetheless, defendants point to *Aris* and the cases that have approved its definition as support for their assertion that the concept of imminent peril has a special, technical meaning established by decisional precedent, and, accordingly, the trial court had a sua sponte duty to correctly explain or define it. They appear to ignore the fact the *Aris* definition was given to jurors via the prosecutor's special instruction. In any event, they are wrong.

■ "In the absence of a specific request, a court is not required to instruct the jury with respect to words or phrases that are commonly understood and not used in a technical or legal sense. [Citation.]" (*People v. Navarette* (2003) 30 Cal.4th 458, 503 [133 Cal.Rptr.2d 89, 66 P.3d 1182].) Courts do have a duty, however, "to define terms that have a technical meaning peculiar to the law. [Citations.]" (*People v. Bland* (2002) 28 Cal.4th 313, 334 [121 Cal.Rptr.2d 546, 48 P.3d 1107].) "A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that

*differs* from its nonlegal meaning. [Citation.] Thus, . . . terms are held to require clarification by the trial court when their statutory definition differs from the meaning that might be ascribed to the same terms in common parlance. [Citation.]" (*People v. Estrada* (1995) 11 Cal.4th 568, 574–575 [46 Cal.Rptr.2d 586, 904 P.2d 1197].)

■ Jurors were instructed to apply words and phrases not specifically defined using their ordinary, everyday meanings. Webster's Third New International Dictionary (1986) page 1130 defines "imminent" as "ready to take place: near at hand: IMPENDING." This ordinary, everyday meaning does not differ in any meaningful way from the meaning of the term as contained in the instructions. (See *People v. Rodriguez* (2002) 28 Cal.4th 543, 547 [122 Cal.Rptr.2d 348, 49 P.3d 1085]; *People v. Richie* (1994) 28 Cal.App.4th 1347, 1361 [34 Cal.Rptr.2d 200].) Jurors' common understanding of the term was all that was required for them to be able to understand the relevant legal principles. (See *People v. Raley* (1992) 2 Cal.4th 870, 901 [8 Cal.Rptr.2d 678, 830 P.2d 712].) The fact the term has been defined in case law and jury instructions does not alter this conclusion, since those definitions are not "foreign to common usage." (*People v. Richie, supra*, 28 Cal.App.4th at p. 1362.)

As given, CALCRIM Nos. 505, 571, and 604 correctly stated the law in terms of common, everyday usage. To the extent any further definition may have been appropriate or desirable, it was provided by the prosecutor's special instruction. The instructions were not undercut or contradicted by the prosecutor's argument to the jury. There was no error.

C. *Heat of Passion**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**IV, V***

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**DISPOSITION**

The judgments are affirmed. The trial court is directed to cause the minute order of Flemming's sentencing hearing, and Flemming's abstract of judgment, to be amended to reflect imposition of a 25-year-to-life enhancement

---

*See footnote, *ante*, page 1297.

on count 1 pursuant to subdivision (d) of section 12022.53, and to forward a certified copy of the amended abstract of judgment to the appropriate authorities.

Dawson, Acting P. J., and Kane, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 11, 2012, S197779.