Filed 9/22/22  P. v. Montgomery CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H049134 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C2012448) |
| v. | |
| REGINALD MONTGOMERY, | |
| Defendant and Appellant. | |

A jury convicted defendant Reginald Montgomery of inflicting corporal injury on a partner while having a prior conviction for the same crime within seven years and found true an allegation that Montgomery personally inflicted great bodily injury under circumstances involving domestic violence.  The trial court sentenced Montgomery to eight years in state prison.

On appeal, Montgomery contends the trial court erred when it refused his requested modification to CALCRIM No. 3163, the instruction on the great bodily injury allegation.

For the reasons explained below, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Procedural History*

On October 14, 2020, the Santa Clara County District Attorney filed an information charging Montgomery with one count of inflicting corporal injury upon Julie Doe, a person with whom Montgomery had a dating relationship, while having a specified prior conviction within seven years (Pen. Code, § 273.5, subds. (a), (f)(1);[1] count 1).[2]  The information further alleged that Montgomery had inflicted great bodily injury (GBI) upon Julie Doe under circumstances involving domestic violence (§§ 12022.7, subd. (e), 1203, subd. (e)(3)) (hereafter, GBI allegation).

In March 2021, a jury found Montgomery guilty as charged and found true the GBI allegation.

In May 2021, the trial court sentenced Montgomery to eight years in prison, comprising the upper term of five years for count 1 and a three-year sentence enhancement for the GBI allegation.

B. *Evidence Presented at Trial*

1. Prosecution Evidence

Julie and Montgomery dated "off and on" for about one year prior to September 20, 2020.[3]  On that date, Julie and Montgomery were staying at his cousin's home in San Jose.

Early on September 20, Julie and Montgomery argued while driving and Julie jumped out of the vehicle when they were at a stoplight.  Later that day, while Julie was getting ready for a trip to Santa Cruz, Montgomery became upset because he believed Julie's ex-boyfriend had repeatedly called her cell phone.  They argued again.

---

[1] Unspecified statutory references are to the Penal Code.

[2] The information stated the victim's name using the pseudonym "Jane Doe."  At trial, the victim was called "Julie Doe."  We use the latter nomenclature in this opinion.

[3] Unless otherwise indicated, all dates occurred in 2020.

Montgomery grabbed Julie, clamping his palm around the front of her neck. He asked her, " 'Who the fuck are you talking to?' " After Montgomery released his hand from Julie's neck, a heated argument ensued over their prior relationships. Julie began packing her things because Montgomery told her to get out. He also made a comment about some bottles of personal lubricant, which irritated Julie. She picked up one of the bottles, tossed it over her shoulder (but not in Montgomery's direction), and turned her back to him. He then hit her with what felt like his fist in her ribs on the right side of her back. Julie "heard [her] bones crack."

Montgomery's punch caused Julie "[e]xcruciating" pain in her back, side, and stomach. She fell to the floor and asked Montgomery for help. She was scared and could not breathe. Montgomery first looked at Julie, and then he shook her while telling her to get up. Julie told Montgomery to go outside and calm down. She called 911 but did not speak to the dispatcher because she was scared Montgomery would come back inside. It took Julie about five minutes to get up off the floor.

Julie exited the home, spoke to her sister, and sat in Montgomery's SUV (at his request) for about two minutes. Julie next called her sister and walked away from Montgomery. He followed her. She eventually called 911 again and requested an ambulance. She still could not breathe and "was in so much pain."

When San Jose Police Officer Miguel Lopez arrived at Julie's location, he saw her leaning against a vehicle crying, acting a little bit erratic, and putting pressure on her ribs. She repeatedly said " 'I cannot breathe' " and appeared to be in pain. Before Julie was transported by ambulance to a hospital, Officer Lopez observed redness on her back and rib area.

At the hospital, Julie told the emergency room physician, Dr. Daniel Nelson, that she was in severe pain that worsened when she took a deep breath. Dr. Nelson did not observe any redness or bruising on Julie's chest or back. He ordered X-ray imaging of Julie's ribs, which revealed no obvious rib fracture. Dr. Nelson diagnosed a rib contusion

3

but did not rule out a fracture. He prescribed Julie over-the-counter pain medication and provided her discharge instructions that included a direction to return to the emergency department if she had increased pain or trouble breathing.

Two days later, Julie flew to Minnesota. The following day (September 23), she "could feel [her] ribs moving" and her pain worsening. She had a lot of swelling and some bruising. She could not perform personal hygiene activities and had a hard time eating, breathing, or "do[ing] anything." Sleeping, lying down, and sitting were painful. She went to a hospital. A CT scan of her ribs revealed a "mildly displaced right posterior 9th rib fracture," which was consistent with the information that Dr. Nelson had obtained during his evaluation of Julie three days earlier. Julie testified that nothing happened to her after the incident on September 20 and before she went to the hospital again on September 23 that would have injured her ribs. Additionally, a subsequent X-ray report from the hospital in Minnesota, dated October 3, described fractures on Julie's 9th and 10th posterior ribs, but Dr. Nelson testified that he could not see the latter fracture on the associated X-ray image.

Dr. Nelson opined at trial that Julie "almost certainly had a rib fracture" when he examined her on September 20. He stated that a broken bone is a significant injury and a broken rib is "extremely painful," "not easy for the patient," and generally takes about four to six weeks to heal. On cross-examination, Dr. Nelson acknowledged that an uncomplicated rib fracture is not particularly dangerous, of little consequence, and a relatively minor, though very painful injury.

Julie testified that due to her pain, it took a few months for her to return to working and performing all of her usual day-to-day activities. Julie's pain was most severe for a "good four months." At the time of her trial testimony in March 2021, she still occasionally felt pain.

In addition, the prosecution presented evidence about Montgomery's prior criminal history.

4

## 2. Defense Evidence

Montgomery called three witnesses in his defense. Dr. Eric Wang, an expert in radiology, testified that Julie's September 20 X-ray images indicated a recent "super, super subtle" rib fracture (possibly on the 11th rib), which understandably could have been missed on the treatment date. Dr. Wang said Julie's subsequent CT scan clearly showed a mildly displaced rib fracture with no complication. Dr. Wang opined that the rib fracture could have occurred up to one week before the CT scan was performed. Dr. Wang considered the rib fracture, medically speaking, to be a minor (but painful) injury and declined to characterize the injury as greater than a moderate injury or as a serious or substantial injury.

Montgomery's cousin Vernon McKinney testified that he had been around Julie four of five times during her and Montgomery's relationship, but he was not with them on September 20. McKinney witnessed Julie argue with Montgomery three to four times about calls from Montgomery's ex-girlfriend. McKinney described Julie's behavior during these arguments as "[v]ery violent." He observed Julie call Montgomery names, get in his face, spit in his face, and try to chase him down when he attempted to leave the argument. Based on McKinney's interactions with Julie, he considered her "not very truthful."

Police Officer Miguel Lopez was recalled to the witness stand by the defense. Officer Lopez said that he first contacted Julie on September 20 at a location that was at least a mile or two from Montgomery's cousin's home. When Officer Lopez took Julie's statement in the ambulance, she said that Montgomery had accused her of cheating, but she did not mention receiving phone calls that Montgomery believed came from her ex-boyfriend. Julie said that she threw some lubricant and then Montgomery punched her while she was seated. Julie did not say that Montgomery put his hands on her neck. She also did not say she was scared of Montgomery or request a protective order. When

5

making her statement in the ambulance, Julie did not appear frightened, in excruciating pain, or unable to breathe or move.

## II. DISCUSSION

Montgomery contends the trial court erred when it refused to use his requested instruction defining GBI and instead instructed the jury on the GBI allegation using CALCRIM No. 3163 (CALCRIM 3163). He asserts that CALCRIM 3163 improperly suggested the jury needed to find only that Julie suffered more than minor injuries to find the GBI allegation true.

### 1. Background

Before the trial court gave its final instructions to the jury, Montgomery's defense counsel asked the court to modify a portion of CALCRIM 3163 that defines GBI as follows: " 'Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.' " Relying on *People v. Medellin* (2020) 45 Cal.App.5th 519 (*Medellin*), counsel requested that the second sentence of the definition not include the word "minor" and instead state the following: " 'It is [an injury that is] *greater than moderate harm*." (Italics added.) The prosecutor provided the trial court two other cases relevant to Montgomery's request—*People v. Sandoval* (2020) 50 Cal.App.5th 357 (*Sandoval*) and *People v. Quinonez* (2020) 46 Cal.App.5th 457 (*Quinonez*).

The trial court stated that it had reviewed the precedent provided and rejected Montgomery's request to modify CALCRIM 3163. The court concluded that CALCRIM 3163 "is a correct statement of the law."

In accord with its ruling, the trial court instructed the jury on the GBI allegation with CALCRIM 3163, in relevant part, as follows: "If you find the defendant guilty of the crime charged in Count 1, Penal Code [s]ection 273.5[, subd.] (f)(1), you must then decide whether the People have proved the additional allegation that the defendant personally inflicted great bodily injury on Julie Doe during the commission of that crime,

6

under circumstances involving domestic violence.  A violation of Penal Code section 12022.7[, subd.] (e).  [¶]  Great bodily injury means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm.  [¶]  . . . [¶]  The People have the burden of proving each allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that the allegation has not been proved."

In closing argument, the prosecutor read the definition of GBI provided in the jury instruction and repeatedly addressed the term "minor or moderate."  The prosecutor said, "In other words, greater than minor or moderate harm, it's not just a trivial injury.  It is not insignificant.  It is not moderate.  So anymore than that bruise . . . to get greater than a minor or moderate harm . . . .  [¶]  . . .  And you, as jurors, need to determine where you draw the line on what is greater than minor or moderate harm."  The prosecutor also said, "When assessing whether or not the injuries in this case are great bodily injury, well, of course they are.  That amount of injury is far more substantial and greater than any minor or moderate harm.  It's significant."

### 2. Legal Principles

"The trial court has a sua sponte duty to give correct instructions on the basic principles of the law applicable to the case that are necessary to the jury's understanding of the case.  [Citation.]  That duty requires the trial court to instruct on all the elements of the charged offenses and enhancements."  (*People v. Williams* (2009) 170 Cal.App.4th 587, 638–639.)  Moreover, "a criminal defendant is entitled to pinpoint instructions that relate particular facts to an element of the charged offense and highlight or explain a theory of the defense if the instructions are supported by substantial evidence."  (*People v. Nelson* (2016) 1 Cal.5th 513, 542.)  "But where standard instructions fully and adequately advise the jury upon a particular issue, a pinpoint instruction on that point is properly refused."  (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 857; see also *People v. Thomas* (2012) 53 Cal.4th 771, 826; *People v. Avila* (2009) 46 Cal.4th 680, 708.)

7

We review de novo a trial court's refusal to give a requested instruction. (See *People v. Waidla* (2000) 22 Cal.4th 690, 733.) " 'In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys.' " (*People v. Lopez* (2011) 199 Cal.App.4th 1297, 1305.)

Under section 12022.7, subdivision (f), " 'great bodily injury' means a significant or substantial physical injury." (§ 12022.7, subd. (f).) That is, "not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) "[D]etermining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. [Citations.] ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.] Where to draw that line is for the jury to decide." (*People v. Cross* (2008) 45 Cal.4th 58, 64.) "Proof that a victim's bodily injury is 'great'—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*Id.* at p. 66.)

"When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner." (*People v. Wilson* (2008) 44 Cal.4th 758, 803; see also *People v. Rivera* (2019) 7 Cal.5th 306, 326; *People v. Smithey* (1999) 20 Cal.4th 936, 963.) "We of course presume 'that jurors understand and follow the court's instructions.' " (*Wilson*, at p. 803.)

3. Analysis

Relying principally on the majority opinion in *Medellin*, *supra*, 45 Cal.App.5th 519, Montgomery argues that the " 'greater than minor or moderate harm' " language in

8

CALCRIM 3163 "was improperly ambiguous because it permitted the jury to sustain a GBI allegation based on the 'invalid legal theory' that only 'more than minor' injuries were required." Montgomery further contends that the alleged instructional error violated his federal constitutional rights.

In *Medellin*, the trial court instructed the jury using the same CALCRIM language defining GBI that the trial court used in the present case.[4] (*Medellin*, *supra*, 45 Cal.App.5th at p. 532.) However, in *Medellin* the prosecutor misstated the law by arguing to the jury that "more than minor harm alone was sufficient" to find GBI. (*Id.* at p. 533; see also *id.* at p. 531 [prosecutor argued, " 'An injury that is greater than minor. That is all I need to prove.' "].) The majority in *Medellin* concluded that the prosecutor's misstatement of the law, alone, was not sufficient to reverse the defendant's convictions, but when combined with ambiguity in the CALCRIM instruction, reversal was required. (*Id.* at pp. 533, 535–536.) Regarding the ambiguity in the instruction, the *Medellin* majority focused on the instruction's use of the word " ' "or" ' " in the phrase " 'an injury that is greater than minor or moderate harm' " (*id.* at p. 531) and explained "the CALCRIM great bodily injury definition 'may impermissibly allow a jury to' find great bodily injury means [that] greater than minor harm alone is sufficient." (*Id.* at p. 534.) The dissenting justice disagreed, concluding that the instruction correctly stated the law without ambiguity. (*Id.* at p. 538 (conc. & dis. opn. of Detjen, J.).)

Since the opinion in *Medellin* was issued, two different panels of the Fifth District Court of Appeal have revisited the GBI instruction in *Quinonez*, *supra*, 46 Cal.App.5th 457 and in *Sandoval*, *supra*, 50 Cal.App.5th 357.

In *Quinonez*, the court concluded that the standard CALCRIM definition of GBI was not ambiguous or erroneous and the prosecutor's closing argument was consistent with the proper legal definition and the instructions. (*Quinonez*, *supra*, 46 Cal.App.5th at

---

[4] The instructions at issue in *Medellin* (CALCRIM Nos. 875 and 3160) define GBI in the same way as CALCRIM 3163.

pp. 466, 467.) The *Quinonez* court explained that the "instructions did not allow the jury to find defendant guilty and the enhancements true upon the determination that [the victim's injury] only constituted 'moderate' harm. Instead, the instructions expressly stated the jury had to find [the] injuries were 'significant or substantial,' consistent with the well-recognized definition of great bodily injury." (*Id*. at p. 466.)

Similarly, in *Sandoval*, the majority explicitly disagreed with the reasoning of the majority in *Medellin* and concluded that CALCRIM's GBI definition "d[id] not permit a reasonable finding of ambiguity." (*Sandoval*, *supra*, 50 Cal.App.5th at p. 360.) The majority in *Sandoval* explained: " '[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context . . . .' [Citations.] Thus, it is improper to assess the correctness of the instructional definitions of great bodily injury by focusing exclusively on the use of 'or' in the phrase 'minor or moderate harm.' Rather, that phrase cannot be divorced from the one that immediately precedes it: 'injury that is *greater than*' (italics added). '[I]njury that is greater than minor or moderate harm' cannot reasonably be read to mean injury that is more than minor but less than moderate. Such an interpretation simply does not make sense, legally or grammatically, particularly when the phrase is preceded by the explanation that great bodily injury means physical injury that is 'significant or substantial.' " (*Id*. at p. 361.)

As in *Quinonez* and *Sandoval*, we decide that no error occurred in Montgomery's trial with respect to the great bodily injury instruction. When read as a whole and in context, the definition of GBI in CALCRIM 3163 as given to Montgomery's jury is neither erroneous nor ambiguous. The instruction "clearly informed jurors that great bodily injury meant significant or substantial physical injury, i.e., injury that was greater than moderate harm." (*Sandoval*, *supra*, 50 Cal.App.5th at p. 362.) Further, the prosecutor's closing argument to the jury here accorded with the correct definition of GBI and the jury instruction. Considering the entire trial record, we conclude there is no reasonable likelihood the jurors misapplied the instruction to find GBI based on more

10

than minor harm alone.  As CALCRIM 3163 fully and adequately defined GBI, Montgomery's requested modification to the instruction was unnecessary.  The trial court did not err in refusing to give it.  We discern no instructional error or constitutional violation and reject Montgomery's claims of error.

## III.  DISPOSITION

The judgment is affirmed.

_____
                             Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H049134**
***People v. Montgomery***