Filed 2/8/23  P. v. Blair CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TRAVIS JAMES BLAIR,<br><br>    Defendant and Appellant. | F084373<br><br>(Super. Ct. No. 21CR-06085)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  Steven K. Slocum, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Levy, Acting P. J., Poochigian, J. and Franson, J.

Defendant Travis James Blair was convicted of assault by means likely to produce great bodily injury and was found to have caused great bodily injury. A bifurcated trial was held on aggravating circumstances and the jury found three alleged circumstances—including that the victim was particularly vulnerable—true. The trial court imposed the upper term on the count of conviction. On appeal, defendant contends that the trial court erred in failing to define for the jury what it means for a victim to be "particularly vulnerable." Alternatively, defendant argues that trial counsel's failure to object to the purportedly erroneous instruction constituted ineffective assistance of counsel. The People disagree on both accounts, and further argue that any error was harmless in light of the "powerful evidence of the victim's special vulnerability" and the true finding on the other aggravating circumstances. We affirm.

## PROCEDURAL HISTORY

On March 25, 2022, the Merced County District Attorney filed an amended information[1] charging defendant with assault by means of force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4);[2] count 1). As to count 1, the amended information further alleged that defendant caused great bodily injury (§ 12022.7, subd. (a)). The information also alleged that the following aggravating circumstances justified imposition of the upper term: (1) the crime involved a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1));[3] (2) defendant was armed with or used a weapon at the time of the commission of the crime (rule 4.421(a)(2)); (3) the victim was particularly vulnerable (rule 4.421(a)(3)); and

---

[1] The information was amended by interlineation at the close of evidence; it is not styled as an "amended information" but it bears a handwritten notation and a sticker reflecting that it is an amended information.

[2] Undesignated statutory references are to the Penal Code.

[3] Undesignated rule references are to the California Rules of Court.

(4) defendant had served a prior term in prison or county jail under section 1170, subdivision (h) (rule 4.421(b)(3)).

On March 29, 2022, a jury found defendant guilty on count 1 and found true the great bodily injury enhancement allegation.

On the same date, in a separate finding after the jury returned the verdict, the jury found true the three aggravating circumstances submitted to it:  (1) the crime involved acts disclosing a high degree of cruelty, viciousness, or callousness; (2) defendant used a weapon at the time of the commission of the crime; and (3) the victim was particularly vulnerable at the time of the commission of the crime.

On May 17, 2022, the trial court sentenced defendant to an aggregate term of seven years as follows:  on count 1, four years (the upper term), plus a three-year great bodily injury enhancement.

On May 17, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY

### The Prosecution's Case

At about noon on November 13, 2021, 68-year-old S.M. stopped outside a friend's home as he walked home after collecting recyclables.  His friend sat on the "back of a truck" and invited S.M. to have a drink with her.  S.M. placed his things on the ground and walked over to his friend.  He took one "swig" from a bottle of hard alcohol.  It was late in the day and S.M. was "kind of lost" so he told his friend that he had " 'better get going.' "  S.M. walked to his things and crouched down to pick them up.  As he did so, he saw defendant approach quickly from his side.  He explained that he only got a "quick" look at defendant, but he was sure that it was defendant.  S.M. may have raised his arm in anticipation of an attack.  Defendant struck S.M. on the back of his head with a roughly 14-and-a-half-inch socket wrench and S.M. fell to the ground.

S.M. was taken to the hospital by ambulance.  He was kept at the hospital overnight and received staples on the back of his head to treat a laceration.

3.

On November 13, 2021, S.M. had known defendant for more than eight years. They met through defendant's cousin. S.M. and defendant saw each other about twice per month prior to November 13, 2021. The last time S.M. saw defendant prior to November 13, 2021, defendant approached S.M. and told him they were going to be friends, however, defendant squeezed S.M.'s hand in a way that led him to believe that defendant did not intend to be friendly.

L.R.'s brother- and sister-in-law lived across the street from where S.M. was struck on November 13, 2021. While she was at her brother- and sister-in-law's home, she saw S.M. and defendant fighting or wrestling. She described defendant to have "bear hug[ged]" S.M. Defendant took S.M. to the ground and struck him on the head approximately four times with a long grey or silver cylindrical object. L.R. described defendant as "the bigger man" or the man wearing "the bigger jacket." She described S.M. as an "older" man who "didn't stand tall" and "kind of hunched a little bit. He … seemed smaller than the man hitting him." L.R. then described defendant walking to a motorcycle, riding toward S.M., saying something to S.M., and riding away.

On November 13, 2021, K.H. was seated near S.M.'s friend's home, watching someone else's dog. She saw defendant "come up out of nowhere" and move to "shake [S.M.'s] hand." She originally assumed they were friends, but defendant quickly pulled S.M. toward him and started hitting him. Defendant struck S.M. with a socket wrench with a socket attached. K.H. explained that she knew who defendant was because she had met him before. She described S.M. as an "older man."

**Defendant's Case**

Defendant testified that he was six feet two inches tall and weighed 345 pounds. On November 13, 2021, defendant did not have a motorcycle license, own motorcycle, or ride a motorcycle. That day, defendant was staying in a motel. He woke to a knock on the door from a maid asking if he planned to check out or pay for another night. He called his mother to ask for money to stay for another night at the motel. She agreed to

4.

bring him money and did so. He only left his room on November 13, 2021, to receive money from his mother and pay for the motel room. He did not leave the motel premises before 4:00 p.m. on that date. He did not attack S.M. at S.M.'s friend's home on that date.

Defendant did not know S.M. well, but they had met through defendant's cousin years prior and had briefly come into contact several times over the years.

Defendant was arrested on December 15, 2021. He gave a statement to a detective on that date. He told the detective he did not know S.M. He was not lying; he simply did not know S.M. well and did not remember him on the date the detective asked about him.

Defendant's cousin, A.S., testified that she and defendant's mother visited defendant at the motel on November 13, 2021. They arrived before noon and paid for the room. They stayed in the room with defendant until about 4:00 p.m. She had not seen defendant ride a motorcycle.

Defendant's mother, J.B., testified that she and A.S. visited defendant at the motel on November 13, 2021. They arrived before checkout, which was normally at 11:00 a.m., and stayed with defendant until J.B. took A.S. to work at around 4:00 p.m. or 5:00 p.m. Defendant's girlfriend, M.M., was also at the motel room that day. J.B. did not know defendant to drive a motorcycle.

M.M. testified that on November 13, 2021, she was living with defendant at the motel. She was at the motel with defendant all day with the exception of the time that defendant met his mother to receive money for the room and paid for the room. He was gone for a maximum of 15 minutes.

## DISCUSSION

### I.      Instructional Error

Defendant argues that the trial court erred in failing to define the term "particularly vulnerable," within the meaning of rule 4.421(a)(3), for the jury as part of the instructions. He contends that the error was prejudicial because there was little

5.

evidence that S.M. was particularly vulnerable. The People disagree, arguing that the instruction given—directing the jury to determine whether S.M. "was particularly vulnerable at the time … defendant committed the crime in Count 1"—was sufficiently clear without further definition or amplification. They further argue that "the evidence overwhelming established [S.M.'s] particular vulnerability here so that [defendant] can show no possible prejudice"; in other words, under any definition of "particularly vulnerable," the jury would have found S.M. was particularly vulnerable. We agree with the People on both accounts.

## A. Statutory Framework

From March 30, 2007, to December 31, 2021, California's determinate sentencing law specified that "[w]hen a judgment of imprisonment [wa]s to be imposed and the statute specifie[d] three possible terms, the choice of the appropriate term … rest[ed] within the sound discretion of the court." (§ 1170, former subd. (b).)

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b). (2021–2022 Reg. Sess.; Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(2) now provides, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

## B. Additional Background

The trial court instructed the jury using the following instruction regarding the particularly vulnerable aggravating circumstance:

> "[S.M.] was particularly vulnerable. [¶] … [¶] To prove this sentencing factor, the People must prove that [S.M.] was particularly vulnerable at the time the defendant committed the crime in Count 1.

"You may not return a true finding on a sentencing factor unless all 12 of you agree on that finding. [¶] … [¶] The People have the burden of proving each sentencing factor beyond a reasonable doubt as defined …. If the People have not met this burden, you must find that the sentencing factor has not been proved."

The trial court also instructed the jury at the guilt phase with CALCRIM No. 200, which read in relevant part:

"Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. … Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings."

Defendant's counsel and the court engaged in the following discussion of the sufficiency of the instruction regarding the victim's particular vulnerability:

"[Defense Counsel]: My only concern is to the vulnerability. There's no real definition of what makes someone vulnerable.

"[Trial Court]: That's true. That's very true. I don't know how to define that further because it could be considering his age. It could be considering his position, where he was—if they believed he was crouched down and wasn't looking versus he was shaking his hand, you know. Was he vulnerable because he was caught off guard? It's—

"But here we are. The legislature has given us this new legislation, and the Court is at a bit of a loss on how to define that further. You know, it can be vague, but—

"[Defense Counsel]: That would just be my objection. I'll submit on the record just that the vulnerability instruction, there's no guidance for a jury to reach—how to reach its decision.

"[Trial Court]: And I did try to narrow it down. I believe [the prosecutor] had just written, 'The victim was particularly vulnerable.' And I thought I should try to define that a little bit more. So I changed it to '[S.M.] was particularly vulnerable at the time of the commission of the crime.'

"So just to narrow the focus, you know. Was he—what does that mean, that he's particularly vulnerable? Financially? Mentally? Physical?

7.

At least they're deciding that issue at the time of the crime. That's about as much as I can say about that.

"[Defense Counsel]: Okay.

"[Trial Court]: Submitted?

"[Defense Counsel]: Yes."

No argument was presented before the jury retired to begin its deliberations on the aggravating factors.

## C. Standard of Review

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

"When a word or phrase ' "is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request." ' " (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) "It is only when a word or phrase has a 'technical, legal meaning' that differs from its 'nonlegal meaning' that the trial court has a duty to clarify it for the jury." (*People v. Jennings* (2010) 50 Cal.4th 616, 670.)

We review claims of instructional error de novo. (*People v. Rivera* (2019) 7 Cal.5th 306, 326.)

## D. Analysis

Rule 4.421 does not define what it means for a victim to be "particularly vulnerable." Judicial definitions of the term demonstrate that it has no unusual or specialized meaning: "[p]articularly, as used here, means in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded,

8.

unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act." (*People v. Smith* (1979) 94 Cal.App.3d 433, 436; accord, *People v. DeHoyos* (2013) 57 Cal.4th 79, 154.) Indeed, in providing that definition, the *Smith* court rejected a vagueness challenge to the term "particularly vulnerable." (*Smith*, at pp. 435–436.) It concluded that the term was not vague and it had "no difficulty in applying it …." (*Id.* at p. 436.) Numerous courts have given examples of particularly vulnerable victims. For instance, elderly, children, and physically and mentally disabled people are particularly vulnerable (*People v. Carpenter* (1997) 15 Cal.4th 312, 413, abrogated on other grounds by *People v. Diaz* (2015) 60 Cal.4th 1176, 1189; *People v. Memro* (1995) 11 Cal.4th 786, 884; *People v. Steele* (2002) 27 Cal.4th 1230, 1269; *Smith*, at p. 435); people are particularly vulnerable when they are asleep (*People v. Loudermilk* (1987) 195 Cal.App.3d 996, 1007), taken by surprise (*Smith*, at p. 435), unclothed (*id.* at p. 436), attacked in their own home (*People v. Hall* (1988) 199 Cal.App.3d 914, 922), alone in isolated areas (*Carpenter*, at p. 413), or are meaningfully smaller than the defendant (*People v. King* (2010) 183 Cal.App.4th 1281, 1323). All those examples, as well as the definition provided in *Smith*, are consistent with the common understanding of the term "particularly vulnerable"; it has no special, technical, or unusual meaning.

Because the definition of particularly vulnerable within the meaning of rule 4.421 is the common meaning of the term particularly vulnerable, no definition of the term was necessary. "Jurors' common understanding of the term was all that was required for them to be able to understand the relevant legal principles. [Citation.] The fact the term has been defined in case law … does not alter this conclusion, since th[e] definition[] [is] not 'foreign to common usage.' " (*People v. Lopez* (2011) 199 Cal.App.4th 1297, 1307.) The instruction was not erroneous.

Further, if the trial court had instructed the jury on the definition of particularly vulnerable as defined in *Smith*, as defendant contends was proper, the jury's finding would have been no different because (1) providing the *Smith* definition would not have

9.

changed the jury's understanding of particular vulnerability, as discussed above; and (2) the evidence of S.M.'s particular vulnerability was overwhelming.[4] (*People v. Jablonski* (2006) 37 Cal.4th 774, 821.) S.M. testified that he was crouched down and only saw defendant briefly before he was attacked; S.M. was 68 years of age and defendant was 34 years of age; defendant was considerably larger than S.M.; and defendant was armed with a wrench and S.M. was unarmed. Even if the definitional instruction was required, we would find beyond a reasonable doubt that the jury's finding would have been no different had it been given. Any error was harmless.[5]

## DISPOSITION

The judgment is affirmed.

---

[4] The parties are not in agreement regarding the proper standard for harmlessness. Defendant argues that the standard articulated in *Chapman v. California* (1967) 386 U.S. 18—beyond a reasonable doubt, the error did not contribute to the verdict—applies; the People argue that a lesser standard is applicable because the jury found true other aggravating circumstances (see *People v. Dunn* (2022) 81 Cal.App.5th 394, 409–410). We need not resolve the dispute because, even applying the *Chapman* standard, we would find no prejudice.

[5] Because we conclude that no instructional error occurred and any instructional error was harmless, defendant's ineffective assistance of counsel claim also fails for lack of prejudice. (See *People v. Bolin* (1998) 18 Cal.4th 297, 333 [ineffective assistance claim requires both deficient performance and resultant prejudice, meaning "the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' "].)